# NATHANIEL JOHNSON, JR. v. STATE OF MARYLAND

[No. 536, September Term, 1971.]

*Decided March 22, 1972.*

The cause was argued before ANDERSON, MORTON and CARTER, JJ.

*Donald Daneman* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City, Peter D. Ward* and *Jerry H. Hyatt, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, Nathaniel Johnson, Jr., was convicted by a jury in the Criminal Court of Baltimore, Judge Charles D. Harris presiding, of conspiracy to violate the Controlled Dangerous Substance Law (Indictment #658), possession of heroin (Indictment #663), possession with intent to manufacture and distribute a controlled dangerous substance, heroin, (Indictment #665), and maintaining a common nuisance (Indictment #664). Under the combined Indictments #663 and #665, the appellant was sentenced to a term of twenty (20) years and was fined $25,000.00. The appellant was sentenced to a term of fifteen (15) years and fined $25,000.00 under Indictment #664, the sentence and fine to run consecutively to those imposed under Indictments #663 and #665. Under Indictment #658, the appellant was sentenced to a term of fifteen years and fined $25,000.00, the term to run concurrently with the other two imposed but the fine was imposed consecutively. The total prison sentence received by the appellant was a term of thirty-five (35) years and the total fine imposed was $75,000.00.

On appeal the appellant contends that the trial court erred in denying his motion to quash the search warrant. The appellant makes a two-pronged attack on the warrant. He argues that the affidavit in support of the warrant was insufficient to establish probable cause. Secondly, the appellant argues that the time stated in the

affidavit for the warrant of the observation of the offense and the time when the warrant was issued was so remote as to render the probable cause stale, thereby invalidating the search warrant.

On January 15, 1971, at approximately 7:00 p.m., the police, armed with a search warrant issued the previous day, entered 818 Wicklow Road in Baltimore, searched the premises and found heroin. The appellant, who was present at the time, was arrested and indicted.

## I

### THE AFFIDAVIT AND PROBABLE CAUSE

The appellant argues that the affidavit in support of the warrant was insufficient to establish probable cause.

Judge Orth, speaking for this Court, in *Moore v. State,* 13 Md. App. 711, succinctly set forth the rules governing probable cause for the issuance of a search warrant at 713-716:

> "The rules governing probable cause for the issuance of a search and seizure warrant need not be complex, intricate or perplexing. We said in *Buckner v. State,* 11 Md. App. 55, 61-62:
>
>> 'A judge may issue a search warrant when it is made to appear to him by a written application signed and sworn to by the applicant, accompanied by an affidavit containing facts within the personal knowledge of the affiant, that there is probable cause to believe that a crime is being committed by any individual or in a building within his territorial jurisdiction, and that evidence of the crime is upon the person or within the place to be searched. * * * Probable cause is less than certainty or demonstration but more than suspicion or possibility. It is to be determined by the judge to whom application for the warrant is made. If a prudent and cautious man would be justified from

the facts presented in the affidavit in believing that the offense has been or is being committed, the warrant properly may be issued. In determining the existence *vel non* of probable cause, the judge may give consideration to the special significance which objects, happenings, and individuals may have conveyed to a trained, experienced and knowledgeable police officer making the affidavit accompanying the warrant. * * * And the affidavit may be based on hearsay information, even from an unidentified informant, and need not reflect the direct personal observations of the affiant, but it must contain some of the underlying circumstances from which the affiant could be reasonably justified in a belief that the hearsay information was reliable or the informant was credible. * * *

'When a search warrant is challenged, the lower court, and the appellate court when the determination of the lower court is before it on appeal, must look for probable cause only in the affidavit itself and may not go outside it. * * * However the affidavit should be interpreted in a common-sense and not a hypertechnical manner, and the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. *Frey v. State,* 3 Md. App. 38, 45-46, summarizing the observations in *United States v. Ventresca,* 380 U.S. 102. But * * * this is not to say that probable cause can be made out by affidavits which are purely conclusory., stating only the affiant's or an informer's belief that probable cause exists.' (citations omitted)

"Thus probable cause may be shown in the

affidavit by a statement by the affiant 1) of his direct observations, or 2) of information furnished the affiant by someone else, named or unnamed, or 3) of a combination of the direct observations of the affiant and hearsay information furnished him. In each instance the issuing judge must have before him enough circumstances to enable him to determine the trustworthiness of the information, for he must not only evaluate the adequacy to show probable cause of the facts and circumstances set out in the affidavit but he must also evaluate the truthfulness of the source of the information comprising those facts and circumstances. Due to the infinite variety of human conduct, the sufficiency of any affidavit must necessarily depend upon the particular facts and circumstances in it contained." [Footnotes omitted].

We note that *Moore v. State, supra,* paid due homage to the most important Supreme Court cases dealing with the rules governing a search and seizure warrant, *i.e., Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509; *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, and the recent case of *United States v. Harris,* 403 U. S. 573, 91 S. Ct. 2075, which somewhat limited the application of *Spinelli v. United States, supra.*

In reviewing the five page affidavit in the instant case we must note that there are many instances in which statements made by the affiants are merely conclusory. A number of different informants are relied on by the affiants and in the case of all but one of these informants the affiants make no showing of their reliability other than bald statements that the informants are reliable. However, a warrant which is inadequate in one regard is salvageable in another. *Dawson v. State,* 14 Md. App. 18, concurring opinion by Moylan, J., at 24. In the instant case we feel that the following passage from the affidavit was sufficient to establish probable cause:

"During the second week of December 1970, Det. Requer received certain information from a reliable informant known to members of the Narcotic unit, this informant has in the past given information that proved to be accurate and true, this informant has identified over 35 differnt [sic] photographs of individuals known to the Narcotic Unit as being actively engaged in the illicit drug traffic in Baltimore City. This same informant gave information about each concerning their activities. This information accurately corresponded with information [Page Three] that was previously given by other logally [sic] reliable informants. This same informant gave information and actively participated in certain investigations that resulted in over five arrest and seizures of certain quanities [sic] of controlled dangerous substances and their related paraphernalia during the past six months.

"This same informant related to Det. Requer that he has been in the company of a person known to him as: Junior Bunk N/M 32, the informant was shown a group of photographs and from the group the informant identified the B of I photo #107-996, that being: Nathaniel Johnson N/M 32, the informant related that during the last two days of the 3rd week of December 1970, he was in company with two other males and Junior Bunk, they were in a Mercury Cougar, Gold in color bearing Md. Lic. GN-4034, and same was being operated by Junior Bunk, the informant and the two other males were picked up at the corner of Fulton and Baker Sts. by Junior Bunk in the Mercury Cougar. The informant related that the conversation was about narcotic drugs. While in the car one of the males, who is known to members of the narcotic Unit, whom the informant identi-

fied from B of I photographs, asked Junior Bunk 'If ho [sic] was going to give him his stuff today?' Junior Bunk was then in the area of Edmondson Ave. and Pulaski St. and Brice St. and he stated that he wanted to see if anyone else needed to re-up' [sic] Junior Bunk stopped the car once reaching that location and had conversation with two males at the corner of Brice and Edmondson Ave. the conversation was about re-uping. (to the informant and your affiants this terminology means to re-supply with a quanity [sic] of narcotics) Junior Bunk advised them he would see them later and that if he didn't to get in touch with Jerry or Smoke, (these persons are known to be drug violators—Jerry Knox, the brother-in-law of the Person known as Junior Bunk-Nathaniel Johnson, recently arrested by this Unit for violations of the narcotic laws and is presently awaiting trial. And Henry 'Smoke Dope' Dawson, also a known drug violator. [sic] These persons are known to be lieutenants for Nathaniel Johnson—Junior Bunk. The [Page Four] informant then stated that Junior Bunk then drove near the area of Edmondson Village and then to a street that the informant identified as Wicklow Road, Junior Bunk told the persons in the car to remain in the car and thet [sic] he would be right back. The informant observed Junior Bunk go to 818 Wicklow Road and enter with what appeared to be a key from his coat pocket as he did not knock or ring a bell. After about 5 minutes he came out and walked back to the car and once inside the car he handed to one of the males a brown paper bag, the male opened it and the informant saw that the bag contained from 5 to 8 bundles of glassine bags that contained a white powder—suspected heroin. (a bundle usually contains between 20 & 25 glassine bags)

The male examined the bundles and put them back into brown paper bag and put them in his coat pocket. Junior Bunk then drove back to the area of Edmondson and Brice Sts. and said 'I don't see them so I guess they'll have to see Jerry or one of the others.' Junior Bunk then drove to the area of Fulton and Baker Sts. and everyone got out and Junior Bunk drove from the area."

Following the applicable guidelines, we feel that the last sentence of the first quoted paragraph in the affidavit, which related that the informant had given information and actively participated in investigations resulting in over five narcotic arrests and seizures within the preceding six months, was adequate for the issuing magistrate to conclude that the informant was credible. *Frankis v. State,* 11 Md. App. 534, 538. We feel further that the rest of the above quoted passage sets forth sufficient facts and circumstances so that the issuing magistrate would be justified from the facts presented in the affidavit in believing that the offense has been or is being committed. The second paragraph sets forth observations by an informant who, as has been stated, could have been considered credible by the issuing magistrate. These observations, if true, constitute probable cause to believe that the narcotic laws were being violated by the appellant at 818 Wicklow Road.

The appellant contends, however, that even the quoted portion of the affidavit is insufficient because the sequence of time as to when the informant relayed his observations to Detective Requer is unclear. We disagree. It is true that the first paragraph of the quoted passage relates that the informant first gave information to Detective Requer *during the second week in December, 1970,* and that no other date is given for the passing of information between the informant and Detective Requer. Taken literally this would seem to indicate that the informant gave Detective Requer information about events

which occurred on the last two days of the third week in December, 1970, during the second week in December, 1970. This, of course, is an impossibility and we do not think the magistrate was required to read the affidavit in this manner. As stated, the affidavit should be interpreted in a common-sense and not a hypertechnical manner, and the resolution of doubtful or marginal cases should be largely determined by the preference accorded to warrants. *United States v. Ventresca, supra; Henderson v. State*, 243 Md. 342, 347; *Frey v. State, supra*. Further the general rule is that when an error appears in the affidavit concerning the date of the observation such error will not vitiate an affidavit. Varon, *Searches, Seizure and Immunities*, Sec. 13, at 324. In the instant case, a common-sense interpretation of the affidavit could only have led to the conclusion by the issuing magistrate that there necessarily had to have been some communication between the informant and Detective Requer after the second week in December, 1970. In fact, this communication could only have taken place at some time after the last two days of the third week in December, 1970.

## II

## THE ISSUE OF STALE PROBABLE CAUSE

The appellant contends further that the warrant was a stale warrant in that the issuance of the warrant occurred at a time which was too remote from the observation of the offense. The observations occurred on the 18th and 19th of December, 1970, and the affidavit was made and issued on January 14, 1971. There is no statute in this State providing that the facts in the application, set forth to establish probable cause, must result from observations made within a designated time before the issuance of the warrant. Nor do we find any cases which lay down a rigid rule. However, the remoteness of the facts observed from the date of the issuance of the warrant is an element to be considered in each instance by the issuing authority in determining whether it

appears that there was probable cause. *Clayton v. State,* 1 Md. App. 500, 503. The issue, therefore, is whether this lapse of 26 days between the observation of the facts and the issuance of the warrant, was so remote, *when considered in the circumstances of this case,* so as to invalidate the search warrant. *Clayton v. State, supra,* at 504. See Varon, *supra,* at 322; 100 A.L.R.2d 525.

In *Clayton v. State, supra,* the observations establishing the facts set forth in the application were made during a period of 19 days to 12 days from the making of the affidavit and the issuance of the search warrant. Three observations were made and the Court in *Clayton v. State, supra,* at 504, was of the opinion that the second and third observations confirmed that the observations on the first day were not an isolated instance but part of a continuing plan and practice. The Court considered this continuing plan and practice an important fact in holding that the lapse of 19 days to 12 days was not so remote as to render the warrant invalid. *Clayton v. State, supra,* at 504.

It is true that in the instant case that there were only two valid observations in the affidavit and that the lapse was one of 26 days. However, in the instant case the affidavit asserts that the informant was present when the appellant was making his rounds to determine who was to be re-supplied with narcotics. It was at this point that the appellant returned to 818 Wicklow Road and brought back five to eight bundles of glassine bags containing the suspected heroin. The activity of the appellant when the informant was in the appellant's car seemed to suggest a continuing business in the distribution of narcotics. We feel, therefore, that under the facts and circumstances of this case, the facts observed were not so remote from the issuance of the warrant to invalidate the warrant for lack of probable cause. *Clayton v. State, supra,* at 504. In this regard it is important to remember what we have stated above and what the Court of Appeals said in *Henderson v. State, supra,* when the Court at 347 quoted *United States v. Ventresca, supra:*

"* * * when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

We find no error in the denial of the motion to quash the warrant.

*Judgments affirmed; appellant to pay costs.*