**UNITED STATES of America**

v.

**Jerome CANTOR, a/k/a "Jerry," a/k/a "The Teacher", et al., Appellant.**

**No. 72-1470.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 25, 1972.

Decided Nov. 7, 1972.

Jerome Cantor, pro se.

Richard A. Levie, Appellate Section, Criminal Division, Department of Justice, Washington, D. C., for appellee.

Before STALEY, VAN DUSEN and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This is a pro se appeal by appellant from a judgment of conviction and sentence in the Eastern District of Pennsylvania on an indictment charging him with conspiracy in violation of 18 U.S.C. § 371 and using interstate telephone facilities to conduct an illegal bookmaking establishment in violation of 18 U.S.C. §§ 2 and 1952.

The appellant, indicted with 17 other persons, was tried alone to a jury in a trial commencing September 13th, 1971. On the day appellant's case was scheduled for trial, only he and two others remained for trial by jury. The trial judge, at the request of the United States Attorney, severed appellant's case from the other two. Before granting the request, the trial judge advised the appellant that the severance would mean that he would stand trial alone and ascertained that he had no objection. He had previously asserted his desire to defend himself without the aid of counsel, and, again after the severance, in response to the court, stated that he did not want counsel appointed and would not consult with counsel if the court did appoint. The jury convicted him of conspiracy and on three of the four substantive counts.

Appellant had moved to suppress evidence and the decision denying the motion is reported at 328 F.Supp. 561 (E. D.Pa.1971). Appellant's motion for new trial was also dismissed by the district court. We affirm the conviction.

The first issue raised by appellant is that the district court erred in commencing trial without giving him more time to decide whether to go to trial without counsel. He contends that he had planned, before severance, to rely on following the strategy and performance of counsel for the other defendants. He claims that the court specifically refused a request by the attorney for another defendant that his client be tried first. He argues that he did not realize that the trial would be relatively short because of the severance and that he could have afforded counsel for the shortened trial.

This argument is without merit. Appellant had discharged retained counsel who had represented him at the suppression hearing. He was carefully informed by the trial judge of the consequences of the severance and its probable effect on the length of the trial. The United States Attorney urged the appointment of counsel, and the court advised the appellant of his

right to have counsel appointed. He requested neither that the trial be postponed nor that he be given the opportunity to retain private counsel. He steadfastly refused to accept and signed a written waiver of his right to court appointed counsel. A courtroom is not a forum for the legal training of defendants with advocative ambitions. A defendant who insists on presenting his own defense must accept the consequences of that decision.

■ Appellant's second contention relates to a sum of cash that had been seized from his safe deposit box. He contends that the money should have been returned to him even though he did not file a petition requesting such action. He argues that some request "must have been made" of the court by appellant's former counsel, because the former counsel had advised appellant that the court had denied a request to have those funds made available to pay counsel fees. If appellant was entitled to have this money returned, it was his obligation to present the matter to the court. A court is not required to act sua sponte on such matters.

■ Appellant's third contention is ambiguous. Apparently, the trial judge denied him the right to subpoena and question unnamed informants referred to in the affidavit submitted by the Government to the district court to obtain authorization for the wiretap that produced the evidence against appellant. The trial court did not err in refusing to disclose the identity of these informants. There is no absolute rule requiring such disclosure. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case. . . ." Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957). The testimony of these informants would not have been relevant to appellant's defense and was not essential to a fair trial. Appellant's complaint that he was the victim of a conspiracy against him by the informants and the Government was not substantiated by any meaningful evidence.

■ Appellant's fourth point relates to the admission of testimony of George Gilman. Appellant argues that Gilman should not have been permitted to testify because he had given prior inconsistent testimony before a Grand Jury. This contention is without merit. It is not clear that there was any inconsistency, and, if there were, this would not have been a sufficient basis for excluding the testimony. However, it might have been used to impeach the witness' credibility before the petit jury.

■ Appellant also challenges the admissibility of the wiretap evidence on the ground that the wiretap was improperly authorized. The procedure followed in this case, while not commendable, was similar to that upheld by us in United States v. Ceraso, 467 F.2d 647 (3d Cir. 1972). For the reasons stated in that opinion, we find no reversible error in the authorization procedure utilized in this case.

A novel contention advanced on this appeal relates to the sealing of the application for and orders authorizing the wiretap. After the wiretap was authorized by the district court judge, he gave the application and approval order to the agent who submitted the application and directed him to seal the documents in an envelope and store them. The agent placed the documents in the envelope in the presence of the judge but sealed the envelope *after* he had left the judge's chambers.

■ Appellant contends that the sealing procedure used in this case does not comply with 18 U.S.C. § 2518(8)(b), which provides:

Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the

issuing or denying judge, and in any event shall be kept for ten years.

Although the district court should have paid closer attention to the literal language of the statutory requirement, the variance is not sufficient to constitute reversible error. The apparent purpose of the sealing requirement, as shown by the rest of § 2518(8)(b) and by its legislative history, justifies this conclusion.

 The section was designed to ensure that the orders and applications are treated confidentially.[1] Moreover, the limitations on disclosure in the last sentence of the section indicate that the congressional concern for confidentiality underlay the section. Since the agent made the application and was privy to the orders and since there is no evidence that he disclosed their content to anyone else after leaving the judge's chambers, his sealing the documents immediately after leaving the chambers would not be a breach of confidence. Nor would his storing the documents violate the statute, since it specifically states that custody shall be wherever the court directs.[2] Thus, when § 2518(8)(b) is read in the light of its legislative purpose, it is apparent that the procedures followed in this case were not erroneous. While it would have been more appropriate, and we recommend it for the future, for the judge rather than the agent to have sealed the documents, his sealing would not have added to the confidentiality of the documents.

 Appellant also alleges that his fourth amendment right was infringed by the failure of the Government to turn over to him for inspection certain tapes, the contents of which were used to establish probable cause for the wiretap

under 18 U.S.C. §§ 2518(3)(a)–(d). This did not violate appellant's constitutional right, however, because there was adequate independent information contained in the affidavit to justify a finding of probable cause. *See* United States v. Sterling, 369 F.2d 799, 802 (3d Cir. 1969). A judge could find probable cause on the basis of the information provided by the informants, and the affidavit does meet the standards for probable cause set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

We have examined appellant's remaining contentions and also find them without merit.

The judgment of the district court will be affirmed.

---

1. The report of the congressional committee that drafted the statute explained the function of the requirement solely in terms of protecting the confidentiality of sensitive information. *See* Senate Comm. on the Judiciary, Report on the Omnibus Crime Control and Safe Streets Act of 1967, S.Rep.No.1097, 90th Cong., 2d Sess. 105 (1968), reprinted in 1968 U.S. Code Cong. & Ad.News pp. 2112, 2194.

2. In discussing the identical provision relating to custody of the records of the interceptions, the congressional report noted: "Most law enforcement agency's [sic] facilities for safekeeping will be superior to the court's and the agency normally should be ordered to retain custody. . . ." *Id.* 104, 1968 U.S.Code Cong. & Ad.News 2193.