## OAKLEY CHAFFIN WASHBURN, JR. *v.* STATE OF MARYLAND

[No. 66, September Term, 1973.]

*Decided October 24, 1973.*

188

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Harold Buchman* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donaldson C. Cole, Jr., State's Attorney for Cecil County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

In this appeal, we are asked to decide whether *vel non* the Circuit Court for Cecil County, Wise, J., erroneously deprived the appellant, Oakley Chaffin Washburn, Jr., of a hearing to establish that the evidence adduced by the State against appellant was tainted by an illegal wiretap, whether a search and seizure warrant was invalid because it was "conceivably based upon tainted evidence" obtained through an illegal wiretap, and whether "tapes of the wiretapping" should have been made available to the appellant. We shall set forth herein only those facts necessary to understand the issues involved.

On May 9, 1972, Detective Sergeant Frank Mazzone and Trooper Robert D. Sherman, both of the Narcotics Section, Maryland State Police, made affidavit before a judge of the Circuit Court for Cecil County in support of an application for an ex parte wiretap order. The officers stated that they had received information from a number of confidential informants whose reliability and credibility were demonstrated in the affidavit, that Washburn was "a Distributor of Controlled Dangerous Substances and as such is dealing with other persons who are unknown at this time; and further that the said Washburn is planning together

with other persons unknown, to hire someone to murder . . . Mazzone who has been making arrests for [violation of the laws pertaining to] Controlled Dangerous Substances for several years." The affidavit set forth the telephone number that Washburn used for the purpose of arranging the time and place for the delivery of the controlled dangerous substances and to contact persons "unknown . . . to hire someone to murder . . . Mazzone."

An order was signed by the judge upon the authority of Md. Ann. Code Art. 27, § 125A; Art. 35, §§ 92-99; and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20. The telephonic interception order was "to begin . . . as soon hereafter as practicable" and to "terminate . . . in no event later than 11:45 p.m. on May 30, 1972." The interception actually began on May 11, 1972. The State's Attorney, on May 30, 1972, made application, supported by an affidavit of Trooper Sherman, for an extension of the order. The order as signed contained the proviso that the tap should terminate at 11:45 p.m. on June 25, 1972.

Trooper Michael J. Callanan, Maryland State Police, assigned as an undercover agent, was introduced to appellant by an informant, Richard Whittmere, on June 6, 1972. The trooper and the informant went to appellant's residence where the trooper observed Whittmere purchase the hallucinogenic drug, LSD, from appellant. Whittmere paid to appellant the sum of $125.00. Thereafter the trooper met appellant on "several other occasions in order to purchase large quantities of substances which field tested as LSD." The dates, places, and amounts of the purchases were set out by the trooper in his affidavit in support of an application for a search and seizure warrant. The warrant was issued on June 23, 1972, executed at 5:00 p.m. the next day, and a return thereon was properly made.

The following Controlled Dangerous Substances, proscribed by Md. Ann. Code, Art. 27, § 279, LSD, marijuana, amphetamine, hashish, secobarbital, amo-barbital, and meprobamate, were all seized from appellant's home as a result of the execution of the warrant.

Washburn was indicted on July 14, 1972 for violation of the Controlled Dangerous Substance Laws, and presumably he was also indicted for conspiracy to murder Det. Sgt. Mazzone. The record is unclear as to the precise charge with respect to the conspiracy to murder Mazzone because on motion by appellant, trial for that alleged offense was severed and is not before us.

Appellant filed a motion on July 28, 1972 to suppress the evidence on the ground of "an unlawful search." He moved on August 8, 1972 to dismiss all indictments because they were bottomed on "evidence seized by illegal wire taps." A second motion to suppress the evidence was simultaneously filed. That motion was based upon the alleged illegality of the wiretaps. A third motion to suppress, also filed on August 8, 1972, was predicated upon the right of the appellant "to be free from unreasonable searches and seizures," appellant's right against self-incrimination and his right to counsel.[1] The State denied all allegations in the motions to dismiss, and answered the various motions to suppress by averring that, "It does not intend to use illegally obtained evidence and denies its existence. . . ." On August 29, 1972, the State's Attorney reportedly mailed a letter to appellant. We were advised on oral argument that a copy of the letter was handed to counsel on August 29, 1972. We quote the letter:

"Dear Mr. Washburn:

This letter is to put you on notice that for a period of time prior to your arrest, the Maryland State Police placed a wiretap on your telephone line.

We are not going to use any evidence obtained by use of this wiretap to prove our case against you. We are going to use only that evidence that resulted from the undercover work when we present our cases against you. Our cases against you are not

---

1. Appellant filed various other motions for discovery and inspection, as well as Demands for Particulars.

based on the wiretap but based on the undercover work.

We did not use any evidence obtained from the wiretap when we presented our cases against you during the recent Grand Jury sessions which resulted in the indictments now pending against you."

Appellant filed another motion to dismiss on September 22, 1972, in which he alleged:

"The indictment is founded upon the contents of telephone and oral communications unlawfully intercepted by the state in violation of the Defendant's rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and of the Maryland Declaration of Rights, and of Title III of the Omnibus Crime Control Safe Streets Acts of 1968."

Judge Wise denied all motions to dismiss, but he suppressed "[a]ll logs, records, and memoranda of wire or oral interceptions of conversations of the Defendant or at his premises. . . ." The judge also ordered the State to furnish appellant with copies of the "application, order, logs, and dates of any wire-tap or electronic surveillance of the Defendant or upon his premises. . . ." Appellant then requested a "full adversary hearing to suppress evidence tainted by illegal wire tap and to suppress evidence obtained through search and seizure warrant based upon illegal wire tapping." The motion was denied.

Seemingly, appellant advanced a two-fold theory. First, the wiretap was illegal because of non-compliance with Ch. 119, Title 18 U.S.C., §§ 2510-20. Second, the information leading to the issuance of the search and seizure warrant was obtained through the medium of the illegal telephonic interception and was, therefore, *ipso facto* so tainted that its use in the affidavit supporting the application for the search warrant rendered the warrant invalid.

In this Court the appellant's first contention is subdivided into five separate and distinct attacks upon the hearing judge's ruling on the motion to suppress the evidence gathered under the search and seizure warrant. We shall discuss each of them *seriatim*.

(1)

"The Maryland statutes and the Omnibus Crime Control and Safe Streets Acts of 1968 are unconstitutional."

Appellant acknowledges that his arguments with respect to the unconstitutionality of both the Federal and State Acts is "whistling in the wind" in view of *State v. Siegel*, 266 Md. 256, 292 A. 2d 86 (1972), affirming this Court in *State v. Siegel*, 13 Md. App. 444, 285 A. 2d 671 (1971). The *Siegel* cases are dispositive of the issues raised by the appellant and necessitate no further discussion on our part except to note that many other jurisdictions have upheld the constitutionality of the Omnibus Crime Control and Safe Streets Act of 1968.[2]

(2)

"Was there the requisite probable cause for the issuance of the order authorizing wiretapping?"

---

2. Some of those cases so holding are: United States v. Tortorello, 480 F. 2d 764 (2d Cir. 1973); United States v. Bobo, 477 F. 2d 974 (4th Cir. 1973); United States v. Cafero, 473 F. 2d 489 (3d Cir. 1973); United States v. Cox, 449 F. 2d 679 (10th Cir. 1971), *cert. denied*, 406 U. S. 934, 92 S. Ct. 1783, 32 L.Ed.2d 136 (1972); United States v. Focarile, 340 F. Supp. 1033 (D. Md. 1972), *aff'd sub nom.* United States v. Giordano, 469 F. 2d 522 (4th Cir. 1972), *aff'd mem.*, 473 F. 2d 906 (4th Cir. 1973), *cert. granted*, 411 U. S. 905, 93 S. Ct. 1530, 36 L.Ed.2d 194 (1973); United States v. La Gorga, 336 F. Supp. 190 (W.D. Pa. 1971), *modified*, 340 F. Supp. 1397 (W.D. Pa. 1972); United States v. King, 335 F. Supp. 523 (S.D. Cal. 1971); United States v. Becker, 334 F. Supp. 546 (S.D. N.Y. 1971); United States v. Lawson, 334 F. Supp. 612 (E.D. Pa. 1971), 347 F. Supp. 144 (E.D. Pa. 1972); United States v. Perillo, 333 F. Supp. 914 (D. Del. 1971); United States v. Leta, 332 F. Supp. 1357 (M.D. Pa. 1971); United States v. Scott, 331 F. Supp. 233 (D.D.C. 1971); United States v. Cantor, 328 F. Supp. 561 (E.D. Pa. 1971), *aff'd*, 470 F.2d 890 (3d Cir. 1972); United States v. Sklaroff, 323 F. Supp. 296 (S.D. Fla. 1971). The only case we have found holding to the contrary, United States v. Whitaker, 343 F. Supp. 358 (E.D. Pa. 1972), was reversed by United States v. Whitaker, 474 F. 2d 1246 (3d Cir. 1973), *cert. denied*, 412 U.S. 953, 93 S. Ct. 3003, 37 L.Ed.2d 1006 (1973).

Washburn avers that the information upon which the joint affidavit of Mazzone and Sherman was based was stale and, consequently, furnished no probable cause for the issuance of the warrant. In support of his argument, he relies principally upon *Johnson v. State,* 14 Md. App. 721, 288 A. 2d 622 (1972), *cert. denied* 266 Md. 738 (1972); *cert. denied* 409 U. S. 1039, 93 S. Ct. 517, 34 L.Ed.2d 487 (1973). In *Johnson, supra,* at 730, we held that a lapse of 26 days "between the observation of the facts and the issuance of the warrant" was, considering the attendant circumstances, not so remote as to invalidate the search warrant for lack of probable cause. There is no statute in this State mandating a designated time within which a warrant must issue, after observation of the facts upon which the affidavit in support of the warrant is founded. We observed in *Johnson, supra,* that we were unable to locate any judicial decision that spelled out a rigid time rule, and we declined to do so. Further, at 729-30, we stated that, " ... remoteness of the facts observed from the date of the issuance of the warrant is an element to be considered in each instance by the issuing authority in determining whether it appears that there was probable cause." *Johnson* does not hold that remoteness is the sole or controlling element. Remoteness is but one of the factors to be considered in the circumstances of the case.

A perusal of the affidavit in support of the application for the initial wiretap order reveals that the affiants, Mazzone and Sherman, received information about appellant's violation of the Controlled Dangerous Substances Laws of this State from six confidential informants. The first informant stated that "he has been purchasing Marihuana from Washburn for his own use since approximately November of 1969, with the last purchase being approximately three months ago." The police said that they were unable to effect an arrest of Washburn through the use of the first informant because the informant feared for his life. Informant No. 2 gave information that "Oakie [appellant] was distributing Marihuana," and that he, the informant, had been with others "within the past two years

when they purchased Marihuana" from the appellant. Informant No. 2 did not believe that he knew the appellant "well enough to take an undercover investigator to Washburn to purchase Controlled Dangerous Substances." A third informant stated that Washburn had been "distributing Marihuana from January, 1971 to within six months ago." The third informant said that he had purchased Marihuana from appellant for his personal use "with the last purchase being within the past one year." Informant No. 4 furnished information "that Washburn was growing Marihuana in an area near Old Conowingo, Cecil County, . . . in the Summer of 1971." He pointed out the place where the marihuana was grown and from which it was thereafter recovered by the police. Washburn was, however, not observed at the scene. The fifth informant, who was the only one who had not given previous information to the police, advised that "ten persons were distributing Controlled Dangerous Substances in the Cecil-Harford County area. One such person was named as Oakie Washburn who was described as operating a white Cadillac; played in a band at the Ebbtide Rest, Have (sic) de Grace, Harford County, Maryland. This C.I. [confidential informant] #5 stated that Washburn distributes Opium, Speed and Marihuana." Informant No. 5 had "been present when Washburn . . . sold Controlled Dangerous Substances." A sixth informant, in addition to furnishing information regarding the alleged conspiracy to kill Det. Sgt. Mazzone, stated that Washburn had told him, the informant, that he, Washburn, "uses, grows and sells Marihuana." The affidavit is silent with respect to a frame of reference as to when in point of time Washburn's admission was made to the informant.

We think the information supplied by the first four informants, when considered and weighed together with that of the fifth and sixth informants, clearly shows that there was a continuous violation by appellant of the Controlled Dangerous Substances Laws of this State. The information supplied the affiants was not stale because of remoteness, and in our view furnished probable cause for the issuance of the order to tap appellant's telephone.

(3)

"Lack of proof of absence of alternative investigative means required by statute as condition for order invalidates order."

Ch. 119, 18 U.S.C., § 2518(3) provides in part:

"Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that —

* * *

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;"

Md. Ann. Code Art. 35, § 94 (a) states that an ex parte order for the interception of telephonic or telegraphic communications may be issued by a judge of the Circuit Court or the Supreme Bench of Baltimore City upon a "verified application" that sets forth the facts and circumstances upon which the application is made and avers that "[t]here are no other means readily available for obtaining such information."

It is patent that the legislative will, both Federal and State, is that electronic surveillance is to be employed, assuming probable cause and compliance with the other provisions of the Federal and State laws, only when one of three things occur: (1) there are no other means available for obtaining the information because normal investigative procedures have been proven unsuccessful; (2) normal investigative procedures appear unlikely to succeed if utilized, and (3) the implementation of normal investigative procedures will be too dangerous to be operative. In the case before us, the affiants believed that it was unlikely that other investigative procedures would "succeed in obtaining

the identity of all the co-conspirators and in obtaining evidence sufficient to convict." Affiants set out their reasons as "those persons who distribute Controlled Dangerous Substances make their plans such as dates, times, places and manner over the telephone and rarely by any other means, and that persons who would be putting up money to have a murder committed would make contact with each other over the telephone to discuss meeting places, money matters and other arrangements . . . and rarely by any other means."

We think it apparent that in order for the State Police to have obtained the identity "of all the co-conspirators," other than through electronic eavesdropping, it would have been necessary to infiltrate the group of "ten persons" who "were distributing Controlled Dangerous Substances," as well as that group, if it was a separate group, that was plotting the assassination of Det. Sgt. Mazzone. Such an investigative procedure, in our view, was "unlikely to succeed if tried or . . . too dangerous."

(4)

"Protracted period of wire tap was unconstitutional."

The appellant contends that the two wiretap orders, one for 21 days, May 9, 1972 to May 30, 1972, and the second for 26 days, May 30, 1972 to June 25, 1972, are for a period of time proscribed by *Berger v. New York*, 388 U. S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040 (1967). The short answer to this contention is that *Berger* predated the Omnibus Crime Control and Safe Streets Act of 1968, Ch. 119, 18 U.S.C., §§ 2510-20. This Court, speaking through Chief Judge Orth, observed in *State v. Siegel, supra,* at 457, that "[T]he Federal Act cures all the defects enumerated in *Berger.*" One of those defects was the period of time that a tap could lawfully exist. 18 U.S.C., § 2518(5) provides in part:

"No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the

> authorization, nor in any event longer than thirty days. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. . . ."

Thus, a wiretap order may be in the first instance no longer than 30 days. Extensions of the order may be obtained provided there is full compliance with the Act. The orders authorizing the eavesdropping in the instant case were within the statutory limits, were reasonable, and were not violative of the appellant's constitutional rights.

### (5)

> "The wiretapping procedure was invalid because post-intercept notice requirements of federal statutes and federal constitution were violated."

Appellant argues that the notice requirements of the Omnibus Crime Control and Safe Streets Act of 1968 are constitutionally deficient. He contends that under the provisions of 18 U.S.C., § 2518(8) (d) a person whose phone has been tapped may not receive notice thereof for 90 days after the termination period of an order authorizing interception, or extension thereof, and this, he argues, is too long. Moreover, he asserts that in any event in the instant case the State failed to comply with the Act's requirements pertaining to notice. 18 U.S.C., § 2518(8) (d) provides in pertinent part:

> "Within a reasonable time but not later than ninety days after the . . . termination of the period of an order [authorizing interception] or extensions thereof, the issuing . . . judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted

communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of —

(1) the fact of the entry of the order or the application;

(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

(3) the fact that during the period wire or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed."

We think the 90 day notice requirement to be constitutional, and we adopt the view expressed in *United States v. Cafero, supra*, wherein it is stated, at 500:

" ... As we have observed, the constitutional standard for searches and seizures relating to both tangible objects and communications is the reasonableness of the governmental action. Only unreasonable searches and seizures are beyond the constitutional pale. *A statute which requires an inventory to be filed within 'a reasonable time' cannot, without more, be said to offend this test.*" (Emphasis supplied).

The notice requirements of the statute are mandatory. That the State may decide at some point before the expiration of the 90 day period that it will not use the tapes is irrelevant. The procedure set forth in 18 U.S.C., § 2518(8) (d) must be strictly adhered to or the tapes and the evidence tainted thereby will be suppressed. A self-serving statement by the

State to the effect that it did not use the wiretap evidence before the Grand Jury, nor will it use the same at the trial on the merits, does not excuse a failure to comply with the notice provisions of the Act.

The notice to the appellant in the instant case was contained in the letter from the State's Attorney dated August 29, 1972, which has been set forth *ipsissimis verbis* above. There are several material aberrations in the notice: (1) there is nothing to indicate that the tap on Washburn's telephone was authorized by an order of court; (2) the required showing of the date of the entry of the orders is conspicuous by its absence; (3) the period of time that the orders were in effect is not made known. In connection with notice, the issuing judge passed an order on June 30, 1972, which states:

> "The Court upon application and hearing ex parte by the State has extended the usual 90 day period to an *indefinite longer time* in which the State shall be required to reveal to the accused the fact of and the contents of a certain wire tap of the phone of a certain Washburn, good cause having been shown to the Court by the State in that to reveal the same earlier would endanger the life of an unexposed undercover agent.

> The Court further authorized the original tapes resulting from the wire tap to be placed in the custody of and secured by Trooper First Class Robert D. Sherman, Maryland State Police, in his official capacity." (Emphasis supplied).

The authority vested in a judge to postpone the serving of the notice required by § 2518(8) (d), upon a showing of good cause, does not confer the right to postpone the notice for "an indefinite longer time." Under such an order, notice, conceivably, might never be given to an accused or other person whose telephone has been tapped, and consequently would thwart the legislative will.

When the 90 day notice provision is "postponed" the order should set forth some reasonable future time at which point

the State must furnish notice to an accused or other person whose telephone has been tapped.

We think that an "ex parte showing of good cause to a judge" should be by way of a petition filed by the State and should contain sufficient facts to enable an appellate court to review the judge's determination that "good cause" existed for the postponing of the serving of notice.

> " ... Clearly, however, courts should exercise great care in granting extensions beyond the ninety day period for the filing of inventories." *United States v. Cafero, supra*, at 500.

As this case reaches us, there is nothing in the record, except the issuing judge's conclusion, to enable us to formulate a judgment in respect to the postponement of notice. It may be that the judge was correct, but we should be afforded the opportunity to review the facts, shown in a petition, upon which the issuing judge based his conclusions.

Appellant's second contention is that the search and seizure warrant was invalid. He argues that he should have been granted a hearing at which he may have been able to demonstrate that the police obtained the identity of the informant, Richard Whittmere, as a result of the wiretap. Whittmere, as we have previously observed, accompanied Trooper Callanan on the latter's first visit to the appellant's residence. Appellant maintains that if the tap were illegal, and we think it was for the reasons hereinbefore set forth, the State Police's knowledge of Whittmere was the product of illegally intercepted evidence.

Once it is shown that the identity of a State witness was discovered through an illegal wiretap, that witness's information — whether by way of testimony at trial or as support for a finding of probable cause — must be excluded unless the State can establish: (1) that the identity of the witness originated from an independent source, or (2) that the taint, resulting from the witness's identity being discovered as a result of an originally unlawful wiretap, has become so attenuated that there is no rational basis to

exclude the evidence obtained from the witness.[3] *United States v. Marder*, 474 F. 2d 1192 (5th Cir. 1973); *People v. Scharfstein*, 52 Misc. 2d 976, 277 N.Y.S.2d 516 (Sup. Ct. 1967). We decline to adopt a rule which would, *ipso facto*, exclude all testimony of a witness identified as a consequence of an illegal search.

A reading of the transcript in this case indicates that Trooper Callanan not only emphatically denied that he had gained knowledge of Whittmere's existence from the wiretap, but stated that he was introduced to Whittmere "by the Delaware State police," who advised him that Whittmere was a "police informant." Callanan's testimony makes it vividly clear that the identity of the informant originated from an independent source — the Delaware State Police. Assuming, *arguendo*, that the identity of Whittmere was first gleaned by the Maryland State Police as a direct result of the electronic surveillance, it is, nevertheless, pellucid that after Callanan had been introduced to the appellant by Whittmere, Callanan, in his undercover role, made purchases of proscribed controlled dangerous substances from the appellant. The dealings between Callanan and the appellant so diluted the original taint of the informant as to make it virtually non-existent.

Lastly, appellant argues that Judge Wise erred in denying to the appellant the tapes of the wiretap. In his motion for a full adversary hearing, appellant stated in part:

"Pursuant to an Order of this Court, the State

---

**3.** In Pitler, *"The Fruit of the Poisonous Tree" Revisited and Shepardized*, 56 Calif. L. Rev. 579 (1968), at 646 it is stated:

"The critical question when dealing with attenuation should be whether the admissibility of the challenged evidence will create an incentive for illicit police activity in the future. The attenuation doctrine can play an important role in the application of a derivitive evidence rule. Experienced trial judges must carefully scrutinize sophisticated arguments which attempt to make the illegal link in the chain appear weak when, if fact, the entire chain depends on and encourages illicit police activity."

*See also:* Comment, *Fruit of the Poisonous Tree — A Plea For Relevant Criteria*, 115 U. Pa. L. Rev. 1136 (1967).

> has provided the Defendants with the applications for electronic surveillance, the affidavits supporting them, and the orders of this Court authorizing such surveillance. *The State has also extended to the Defendants the opportunity to review the tapes themselves, although that has not yet been done at the time of the filing of this Motion.*" (Emphasis supplied).

Apparently the "opportunity to review the tapes themselves" was never again presented because, after oral argument on the motion, Judge Wise declined to order the tapes made available to the appellant. It would seem that the appellant's motion terminated the State's willingness to allow a review of the tapes by appellant's counsel. The judge, by his order, ended whatever agreement existed between the State and the appellant.

In this appeal the basic underlying contention of the appellant, stripped of its veneer, is that the State learned of the identity of the informant, Whittmere, solely through the illegal wiretap, and, appellant, given the opportunity to listen to the tapes, might have been able to establish some taint that conceivably would have necessitated the suppression of all the other evidence. His allegation regarding the origin of Whittmere's identity is, for the reasons we have previously discussed in this opinion, fallacious. The affidavit of Trooper Callanan in support of the application for the search and seizure warrant was, on its face, valid. Moreover, even if we assume that there was original taint concerning Whittmere's identity, it was, in the same affidavit, clearly shown to have been attenuated. Under the circumstances of this case, the tapes having been suppressed, there was no justification for a hearing at which appellant would have been allowed to conduct a baseless "fishing expedition" in the hope and expectation that some taint, somehow, might be found. The trial judge, pursuant to 18 U.S.C., § 2518 (8) (d) quoted above, possesses broad discretionary power as to whether or not to make the tapes available to the appellant or to his counsel for inspection.

204

Judge Wise. did not abuse his discretion by refusing to hold the requested hearing or by denying access to the tapes.

*Judgments affirmed.*
*Costs to be paid by appellant.*