GARY PAUL DONALDSON *v.* STATE OF MARYLAND

[No. 752, September Term, 1979.]

*Decided October 8, 1980.*

522

The cause was argued before LOWE, MASON and MACDANIEL, JJ.

*Howard Margulies, Assigned Public Defender,* for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Mark A. Binstock, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

Appellant, Gary Paul Donaldson, was convicted at a bench trial in the Circuit Court for Montgomery County of possession of controlled dangerous substances (PCP) and possession of controlled paraphernalia. On appeal he argues:

1. That the affidavit in support of the search and seizure warrant lacked probable cause.

2. That the delayed execution of the warrant constituted an unreasonable search and seizure.

3. That the seizure of the film canister from his pocket was an illegal search.

## I.

On July 13, 1978, a search and seizure warrant was issued for the premises located at 4511 Grenoble Court in Wheaton, Maryland authorizing the search of the premises and the seizure of controlled dangerous substances and paraphernalia. Application for the warrant was supported by affidavits from Officers Joseph R. Hock, Jr., who possessed considerable experience in conducting narcotic investigations and had received extensive training in this field, and Paul E. Morrison, a police officer for several years.

Appellant attacks the search and seizure warrant on the basis that the supporting affidavit lacked probable cause, *i.e.,* it did not show that the informants were credible, the information reliable, and that they possessed a sufficient basis of knowledge as required by *Aguilar v. Texas,* 378 U.S. 108 (1964). It is axiomatic that probable cause may be established by either or both of the following: (1) the direct observation of the affiant, or (2) heresay information furnished to the affiant. In *Moore v. State,* 13 Md. App. 711, 715, 284 A.2d 614 (1971) this Court said:

> "Thus probable cause may be shown in the affidavit by a statement by the affiant 1) of his direct observations, or 2) of information furnished the affiant by someone else, named or unnamed, or 3) of a combination of the direct observations of the affiant and hearsay information furnished him."

The affidavit in this case was based on hearsay information furnished by ten undisclosed informants who were described in the affidavit as "concerned citizens," [1] combined with

---

1. At the suppression hearing the police testified that they used the term "concerned citizen" because they could not substantiate the reliability of the informants based on past performance.

independent investigations and observations by the affiant-officers which verified, corroborated or authenticated, in part, the information given by the informants. This buttressing technique was approved in *Spinelli v. United States,* 393 U.S. 410 (1969); *accord, Stanley v. State,* 19 Md. App. 507, 529, 313 A.2d 847 (1974) where we said:

> "When the independent police observations have verified part of the story told by an informant, that corroboration lends credence to the remaining unverified portion of the story by demonstrating that the informant has, to the extent tested, spoken truly. . . . The verification helps to demonstrate his 'credibility.' Present good performance shows him to be probably 'credible' just as surely as the past good performance."

Even excluding the hearsay information furnished by the ten alleged "concerned citizens," the independent observations by the police were sufficient to establish probable cause. Therefore, an analysis of the hearsay information under the *Aguilar* test is not required. With respect to independent police observations, this Court said:

> "When such observations are sufficient in themselves to demonstrate probable cause, the final problem is thereby solved and all information both from and about the informant becomes a redundancy; probable cause is established without necessary resort to the hearsay."

*Stanley v. State, supra,* at 528. *Accord Frankel v. State,* 178 Md. 553, 16 A.2d 93 (1940).

After conducting an independent investigation of substantial duration in connection with drug trafficking at the target premises, the affiants observed, among other things, a large number of persons with prior arrests for violating the narcotic laws entering and leaving the premises within short periods of time. They concluded that the residence was

characteristic of premises used for drug trafficking. These observations were summarized by the affiants as follows:

> "Several people arrive in one vehicle but only one or two persons enter the residence, persons involved in drug trafficking conduct such transactions within short periods of time. Persons purchasing C.D.S. [controlled dangerous substances] often park their vehicles not directly in front of a residence used for drug trafficking. Vehicles from different jurisdictions frequent a premises used for the trafficking of C.D.S. Packages go in and out of the premise used for the trafficking of C.D.S. and premises used for the trafficking of C.D.S. are frequented by previous C.D.S. violators and members of the criminal element."

## II.

The search warrant in this case was issued on July 13, 1979 and executed on July 24, 1979. The warrant commanded the officers to conduct the search of the premises "forthwith".

The officers testified that the target premises were kept under surveillance from the date the warrant was issued until it was executed. During this period the traffic pattern of the people coming and going was monitored in order to determine when appellant had the most drugs and when was the most opportune time to execute the warrant. The delay in executing the warrant occurred because appellant had a party at his house on the 14th and for security reasons the warrant was not executed. The officers did not work on the 15th and the 16th which was a Saturday and Sunday, and on the 17th there was not much activity on the premises. Appellant was arrested on the 18th for an unrelated drug charge, and the officers thought he probably had most of the drugs on his person or in his automobile at the time of the arrest. On the 19th traffic was light and the officers assumed appellant was keeping quiet after his arrest. On the 20th and 21st

there was only a little traffic in and out of the premises. The 22nd and 23rd was a weekend and the officers did not work. The warrant was executed on the 24th.

Appellant contends that the officers disobeyed the command of the warrant by deliberately delaying its execution in the expectation of finding a larger quantity of drugs on the premises, and because they wanted to arrest other persons buying drugs. He argues that this delay amounted to an unreasonable search and seizure in violation of the Fourth Amendment.

In support of this argument appellant relies on the case of *Cave v. Superior Court, County of San Mateo,* 267 Cal. App. 2d 517, 73 Cal. Rptr. 167 (1968). There the search warrant was issued on December 4, 1967 and executed on December 11, 1967. The sole reason for the seven day delay in executing the warrant was the officers' expectation of finding additional stolen property on the premises. The California Penal Code required search warrants to be executed within ten days, and commanded peace officers to make an immediate search of the premises. The petitioners argued that the search was illegal because of the delay in executing the warrant, whereas respondent argued that the search was valid because it was conducted within the prescribed ten day period. In holding that the search was invalid, the court said:

> "It is impossible for use to read this statute as permitting a search the time of which is at the officer's discretion within the maximum, a search which is timed by the officer to produce property which he believes was brought to the premises subsequent to the issuing of the warrant, and the return to which is, of course, also delayed. The statute speaks of immediacy. It does not admit of delay that is calculated on the making of a more fruitful search than that which was described to the magistrate.
>
> The terms of section 1529 and those of the warrant which was issued seems compelling to us. The words 'immediate' and 'forthwith' lose their

true meaning if they be thought to relate to any time at all within ten days." *Id.* at 169.

Article 27, section 551 of the Annotated Code of Maryland (1976 & Cum. Supp. 1979) provides that a search warrant shall be executed within fifteen days from issuance and after the expiration of the fifteen day period said warrant shall be null and void. The statute, however, does not require the warrant to command peace officers to make an "immediate" or "forthwith" search. The State argues that because the warrant in this case was executed within the fifteen day period prescribed by the statute, it was *per se* timely and valid. As authority for this position, it cites *Griffin v. State,* 232 Md. 389, 194 A.2d 80 (1963) where the defendant argued that the search warrant was defective in that it contained no limitation as to time or place. In disposing of this contention, the Court of Appeals held, among other things, that the fifteen days provided by the statute was a reasonable time to allow for the execution of the warrant. We do not think *Griffin* is authority for what the State purports. In *Griffin,* the warrant authorized the search of a person and not a place, and did not direct an immediate or forthwith search. Furthermore, the Court was not concerned with the issue presented here, *i.e.,* whether a police officer may delay execution of a search warrant (for eleven days in which a forthwith search is commanded) for the purpose of conducting the search at a time when the officer believes there would be a greater probability of seizing a larger quantity of drugs. No Maryland appellate case has come to our attention in which this precise issue has been considered.

As we read the statute, fifteen days is the maximum allowable delay for the execution of a search warrant, but execution in less than fifteen days may be required depending on the facts and circumstances of each case. Although the statute does not require the forthwith execution of the warrant, it goes without saying that the judicially imposed requirement that the warrant shall be served forthwith was a mandate which controlled the execution of the warrant in this case. Other jurisdictions confronted with statutes or rules requiring "forthwith" ser-

vice of a search warrant have construed this to mean that the warrant must be executed with reasonable promptness and diligence, taking into consideration the actual difficulties encountered in attempting to effectuate the search. In *Moss v. Director,* 32 Md. App. 66, 73, 359 A.2d 236 (1976) the term "forthwith" was interpreted to mean "with all reasonable dispatch consistent with the circumstances."

What we have here is an apparent conflict between the statute which requires service of the warrant within fifteen days, and the command of the warrant which required the search to be conducted forthwith. Prior to a 1972 amendment eliminating the forthwith requirement, Rule 41 (c) of the Federal Rules of Criminal Procedure required that a search be made forthwith, and Rule 41 (d) required that a search warrant be executed within ten days. Many cases arose in the Federal Courts which attempted to reconcile the apparent conflict between the forthwith requirement of Rule 41 (c) and the ten day limit of Rule 41 (d). A distillation of these cases indicates that the Federal Courts have interpreted the forthwith requirement to mean that the warrant must be executed without unreasonable delay, but if the search is conducted within the ten day limitation period, evidence seized pursuant to the search will be suppressed only if the defendant can show that he was prejudiced by the delay. *See, e.g., United States v. Wilson,* 491 F.2d 724 (6th Cir. 1974) where execution of a warrant was delayed six days to conceal identity of informant; *United States v. Rael,* 467 F.2d 333 (10th Cir. 1972) — five day delay caused by lack of sufficient personnel; *United States v. Harper,* 450 F.2d 1032 (5th Cir. 1971) — nine day delay resulting from desire to arrest accomplices; *United States v. Dunnings,* 425 F.2d 836 (2d Cir. 1969); *cert. den.* 397 U.S. 1002 (1970) — nine day delay resulting from a desire to arrest defendant; *United States v. Nepstead,* 424 F.2d 269 (9th Cir. 1970), *cert. den.* 400 U.S. 848 — six day delay caused by a desire to wait until illicit drugs were actually manufactured. In all of the above cited cases the delay in the execution of the search warrant was found to be reasonable, and the defendants were not prejudiced by the delay, *i.e.,* the

probable cause upon which the warrant issued still existed at the time the warrant was executed. We think the case of *United States v. Bedford,* 519 F.2d 650, 655 (3rd Cir. 1975) *cert. den.* 424 U.S. 917 cogently states the rule, which we adopt, regarding the execution of a search warrant:

"The element of time can admittedly affect the validity of a search warrant. Since it is upon allegation of presently existing facts that a warrant is issued, it is essential that it be executed promptly, 'in order to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated.' If the police were allowed to execute the warrant at leisure, the safeguard of judicial control over the search which the fourth amendment is intended to accomplish would be eviscerated. Thus, a search pursuant to a 'stale' warrant is invalid.

It is generally accepted, however, that a warrant need only be executed within a *reasonable* time after its issuance, notwithstanding the presence of 'forthwith' language in the warrant. Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was *per se* reasonable or unreasonable. Rather it should be functionally measured in terms of whether probable cause still existed at the time the warrant was executed." (Emphasis in original). (Footnotes omitted).

The rationale in *United States v. Bedford, supra,* regarding the staleness of probable cause in the execution of a warrant is analogous to the rule the Court of Appeals and this Court adopted with regard to the staleness of probable cause in the issuance of a warrant. *See Peterson v. State,* 281 Md. 309, 379 A.2d 164 *cert. den.* 435 U.S. 945 (1977); *Andresen v. State,* 24 Md. App. 128, 331 A.2d 78, *cert. den.* 274 Md. 725 (1975), *aff'd.* 427 U.S. 463 (1976); *Washburn v. State,* 19 Md. App. 187, 310 A.2d 176 (1973); *Johnson v.*

*State,* 14 Md. App. 721, 288 A.2d 622, *cert. den.* 266 Md. 739, *cert. den.* 409 U.S. 1039 (1972); *Clayton v. State,* 1 Md. App. 500, 231 A.2d 717 (1967). In *Andresen v. State, supra,* Judge Moylan, speaking for this Court, lucidly explicated the general rule regarding stale probable cause:

> "The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed." 24 Md. App. at 172.

The rule enunciated in *Andresen* is not only relevant to the length of delay between observation and issuance of a warrant, it is also relevant to the length of delay between issuance and execution of a warrant. What the Court of Appeals said in *Peterson, supra,* is apposite here.

> "By its nature, traffic in illegal drugs is ordinarily a regenerating activity, and there was clear indication here that the activity was continual, a course of conduct regularly followed over a protracted time. There was also ample reason to believe from the recitals that Peterson was entrenched in the illicit activity, not only from the information given by confidential informants, but

from actual purchases from time to time from him. He followed a persistent pattern of criminal involvement relating to narcotic drugs. It is true that narcotics are easily transferable, but the repeated distribution evident from the facts showed that they were readily replaceable and that Peterson had an available source of supply." *Id.* at 321.

For the reasons herein stated we conclude that the timeliness of the execution of the warrant is not measured by whether the delay was reasonable or unreasonable, but by whether the probable cause upon which the warrant was issued still existed at the time the warrant was executed. In the present case no prejudice attributable to the delay has been asserted, and nothing in the record indicates that the probable cause upon which the warrant was issued, *i.e.,* illegal drug trafficking, did not still exist at the time the warrant was executed.

## III.

Immediately after entering the named premises to execute the warrant, Officer Morrison conducted a search of appellant for weapons. While frisking appellant, the officer observed an object in appellant's shirt pocket which he presumed was a film canister. The officer removed the canister from appellant's pocket and it contained PCP — a controlled dangerous substance.

At the suppression hearing the following colloquy occurred between counsel for appellant and Officer Morrison:

### "CROSS EXAMINATION

BY MR. HEENEY:

Q: You were searching for weapons — we all agree with that — on the person of the defendant?

A: Right.

Q: Tell us whether or not you saw anything. Did you see any bullets or anything in the defendant's pockets?

A:  Well, when I was searching him when I put him up against the wall?

Q:  Right.

A.  I pretty well knew what was in one pocket, yes.

Q:  What did you pretty well know was in one pocket?

A:  From the outline of the thing against the shirt, I presumed it was a film canister.

Q:  Not a weapon?

A:  Correct.

Q:  Your presumption that it was a film canister led you to believe that in no way did that canister endanger you or your fellow officers, correct?

A:  Correct.

Q:  Did you yourself reach into the pocket of the defendant and retrieve it?

A:  Yes, I did.

Q:  That was the film canister?

A:  Right.

Q:  Was the inside of the film canister visible?

A:  When I removed the top, the insides became visible.

Q:  When you took the top off?

A:  Yes.

Q:  Prior to the time you took the top off the film canister you didn't know whether the contents were film, drugs or nothing at all, did you?

A:  Based on my experience I was pretty well sure in my mind I knew what it was. It's a common carrier of — it is used commonly to carry a certain drug.

Q:  In your experience?

A:  Yes.

Q:  But you had no specific or particular facts in which to conclude that that canister contained the drugs, did you?

A:  From my experience and for the reason we were there I assumed that I did, yes.

Q: That was your assumption?

A: I was one hundred percent sure."

Appellant argues that the taking of the film canister from his pocket was an unlawful search and seizure in violation of the Fourth Amendment of the United States Constitution. We agree. The State's apparent theory for justification of the warrantless search is that the police officer had sufficient probable cause to believe that the object in appellant's pocket was a film canister, and that based on his training and experience the officer was one hundred percent sure the canister contained a controlled dangerous substance.[2] In *Liichow v. State,* No. 89 (Md. Filed Sept. 10, 1980), a trooper observed fifty white dime-sized tablets in a plastic baggie. Based on the trooper's training and experience he believed the tablets were a controlled dangerous substance and seized them. The Court of Appeals held: "[M]erely seeing dime-sized white tablets among personal belongings does not make it *immediately apparent* that the viewer has before him *evidence* of criminal conduct." *Id.* slip op. at 12. (Emphasis in original). *See also DiPasquale v. State,* 43 Md. App. 574, 406 A.2d 665 (1979). There a police officer who had a reasonable suspicion that the defendant was intoxicated by drugs, noticed a plastic baggie protruding from the pocket of the defendant's jump suit which appeared to him to contain a few grains of cigarette tobacco. After seizing the baggie and observing its contents, the officer arrested the defendant for possession of marihuana. In holding that the seizure was unlawful, we said:

"There is nothing in this record demonstrating that the officer here believed that the bag which he observed partially in open view was evidence of crime. This critical element of nexus or probable cause for a warrantless seizure was well articulated

---

2. The State does not contend that the search was conducted as an incident to a lawful arrest, nor does it contend that the search was legal under authority of the search warrant. See Salmon v. State, 2 Md. App. 513 (1967) and Haley, Peterson and Roberts v. State, 7 Md. App. 18 (1969).

by Judge Levine in *State v. Wilson,* 279 Md. 189, 195, 367 A.2d 1223, 1227 (1977):

'[I]t was not "immediately apparent to the police that they [had] evidence before them." This element, in essence, amounts to a requirement that police have probable cause to believe the evidence is incriminating before they seize it. As the court said in *United States v. Gray, supra,* 484 F.2d at 356, "[I]t must be 'immediately apparent' to the police that the object is in fact incriminating or the seizure of the object would be without probable cause and would turn the search into a general or exploratory one." [Citations omitted].' *Id.* at 576.

In the case now before us, Officer Morrison testified that he presumed the object in appellant's pocket was a film canister "from the outline of the thing against the shirt". He further testified that because of his experience he was one hundred percent sure the canister contained drugs. The only evidence in the record concerning Officer Morrison's training and experience is the following information contained in the affidavit for the search warrant: "Your affiant, Off. P. Morrison, has been a Montgomery County Police Officer since June 22, 1970 and has been assigned to the Vice-Narcotic Division since May 7, 1978. Your affiant is presently receiving on-the-job training . . . to supplement his previous eight year police experience." We note that Officer Morrison was assigned to the Vice-Narcotics Division on May 7, 1978, and the warrant was executed on July 24, 1978.

Even if we were to assume that Officer Morrison's experience with narcotics was extensive, which it was not, it is doubtful under the circumstances here that he had an adequate basis from which reasonably to assume that the object in appellant's pocket was a film canister, and that the film canister contained a controlled dangerous substance. To reach such a result would do violence to the "plain view" exception to the warrant requirement which may not be used as a vehicle to conduct a general or exploratory search.

Because the film canister containing a controlled dangerous substance was unlawfully seized from the person of appellant, we reversed and remand for a new trial on Count One — possession of controlled dangerous susbstances (PCP).

> *Judgment as to count one — possession of controlled dangerous substances reversed and remanded for a new trial.*
>
> *Judgment as to count two — possession of controlled paraphernalia affirmed.*
>
> *Costs are not reallocated as part of the judgments of this court pursuant to Maryland Rule 1082 f.*