## STATE OF MARYLAND *v.* EDWARDS

[No. 7, September Term, 1972.]

*Decided October 16, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edward F. Borgerding, Assistant Attorney General,* on the brief, for appellant.

Submitted on brief of Court of Special Appeals by *Gerald A. Kroop* for appellee.

SMITH, J., delivered the opinion of the Court.

Horace L. Edwards was convicted in the Criminal Court of Baltimore on several charges involving violations of the narcotic laws. He was sentenced to concurrent terms of imprisonment, the two longest of which were for 12 years. On appeal, the Court of Special Appeals in *Edwards v. State,* 13 Md. App. 546, 284 A. 2d 10 (1971), reversed the convictions without awarding a

new trial on the ground that the affidavit filed "failed to show probable cause for the issuance of the search warrant" which was the basis for the conviction. We granted certiorari. We shall reverse and remand the case to the Court of Special Appeals for further proceedings.

To understand the case it is necessary to quote the affidavit in its entirety:

> "AFFIDAVIT in support of a Search and Seizure Warrant for the premises known as **1210 McElderry Court apartment A-3** which is kept, rented, used or occupied by a colored male known as Horace and a C/F one Brenda Stokes.
>
> "By: Officer Robert Cohen and Leonard Santivasci Eastern Special Operations.
>
> "After receiving information concerning Narcotics Violations being committed at 1210 McElderry Court Apartment A-3 we sent a informant who has been reliable in the past giving information in 12 cases of Narcotic violations to this location. He stated he was admitted to the apartment by a colored female known to him as Brenda Stokes and once inside he met a colored male known to him as Horace. He stated he had a conversation with Horace about trying to buy drugs. Horace stated he had just got some good stuff in, but it wasn't ready yet and they walked into the kitchen and the informant observed empty glassine bags on the table along with measuring spoons and a quantity of white powder. The subject Horace stated it would be a while before he could do anything for him and that when he was ready it would be on the street with his dealers and not to come to the house as he didn't want him there. The informant is familiar with the gelatin caps and envelopes used in the Narcotic operations as he is a addict himself.

"Because the source of information to the affiants mentioned in the opening paragraphs has given information to the affiants on previous occasions and which was correct and because this same information is given by other sources we believe that there are now illicit narcotic drugs and paraphernalia being secreted in the house by Horace and Brenda Stokes and they are with full knowledge and consent letting the premises be used for the purpose of selling Narcotic drugs.

/s/ Officer Robert Cohen
/s/ Officer Leonard Santivasci

"SUBSCRIBED TO AND SWORN TO BE-FORE ME THIS 30 DAY OF SEPT 1970."

The Court of Special Appeals stated:

"It will be noted the affidavit fails to state the time of the events relied upon to show probable cause; thus there is no way the magistrate could determine there was probable cause to believe that the premises involved contained contraband on the date the warrant was issued." *Id.* at 548.

although it recognized the existence of what has been called in some places the "present tense rule" of interpretation of affidavits for search warrants. *See* in this regard Annot., 100 A.L.R.2d 525 (1965), to which it referred.

The finding of "probable cause," while demanding more than mere suspicion, *Draper v. U.S.*, 358 U. S. 307, 311-12, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959), requires less evidence than would justify conviction, *Locke v. U.S.*, 7 Cranch 339, 348, 3 L. Ed. 364 (1813), and less than would justify an officer in making a search without a warrant, *Johnson v. U.S.*, 333 U. S. 10, 15, 68 S. Ct. 367, 92 L. Ed. 436 (1948). The evidence itself need not be

legally competent in a criminal trial, *Draper v. U.S., supra,* 358 U. S. at 311, and may in fact be hearsay, *Jones v. U.S.,* 362 U. S. 257, 272, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), so long as the judicial officer issuing the warrant is informed of some underlying circumstances supporting the affiant's conclusions and his belief that any informant involved was credible or his information reliable, *Aguilar v. Texas,* 378 U. S. 108, 114, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964), and such judicial officer is entitled to draw reasonable inferences from the facts contained in the affidavit based on his experience in such matters, *Irby v. U.S.,* 114 U. S. App. D. C. 246, 314 F. 2d 251, 253 (1963), *cert. denied,* 374 U. S. 842 (1963).

Stripped of all gloss and technicalities, the real issue, the closest we can come to the litmus-paper test mentioned in *U. S. v. Rabinowitz,* 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950), in the evaluation of whether a search warrant was properly issued is the presence or absence of probable cause, a term defined by Chief Judge Brune for the Court in *Dean v. State,* 205 Md. 274, 284, 107 A. 2d 88 (1954), as less than certainty of proof, but more than suspicion or possibility. The term and our concern were summed up by the Supreme Court in *Dumbra v. U.S.,* 268 U. S. 435, 441, 45 S. Ct. 546, 69 L. Ed. 1032 (1925), when it said:

> "We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant." *Id.* at 441.

In *Henson v. State,* 236 Md. 518, 521, 204 A. 2d 516 (1964), and *Henderson v. State,* 243 Md. 342, 344, 221

A. 2d 76 (1966), Judge Hammond discussed probable
cause at some length for the Court. In the latter case at
page 347 of 243 Md. he quoted extensively from the com-
ments of the Court in *U.S. v. Ventresca,* 380 U. S. 102,
85 S. Ct. 741, 13 L.Ed.2d 684 (1965), relative to the need
for a common sense approach in evaluating affidavits
submitted in connection with search warrants. Mr. Jus-
tice Goldberg said for the Court in *Ventresca:*

> "[T]he Fourth Amendment's commands, like all
> constitutional requirements, are practical and
> not abstract. If the teachings of the Court's
> cases are to be followed and the constitutional
> policy served, affidavits for search warrants,
> such as the one involved here, must be tested
> and interpreted by magistrates and courts in a
> commonsense and realistic fashion. They are
> normally drafted by nonlawyers in the midst
> and haste of a criminal investigation. Technical
> requirements of elaborate specificity once ex-
> acted under common law pleadings have no
> proper place in this area. A grudging or nega-
> tive attitude by reviewing courts toward war-
> rants will tend to discourage police officers from
> submitting their evidence to a judicial officer
> before acting.
>
> "This is not to say that probable cause can
> be made out by affidavits which are purely con-
> clusory, stating only the affiant's or an inform-
> er's belief that probable cause exists without
> detailing any of the 'underlying circumstances'
> upon which that belief is based. See *Aguilar v.
> Texas, supra.* . . . However, where these cir-
> cumstances are detailed, where reason for cred-
> iting the source of the information is given,
> and when a magistrate has found probable
> cause, the courts should not invalidate the war-
> rant by interpreting the affidavit in a hyper-
> technical, rather than a commonsense, manner.
> Although in a particular case it may not be easy

to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States, supra*, at 270." *Id.* at 108-09.

A number of courts have recognized that the very language of an affidavit, while not specifying in so many words an exact date or time, when taken as a whole may be indicative of a present violation.

In *Rugendorf v. U.S.*, 376 U. S. 528, 84 S. Ct. 825, 11 L.Ed.2d 887 (1964), an affidavit was submitted by an F.B.I. agent on March 22, 1962, in which he said that another F.B.I. agent had advised of the theft of certain fur stoles and jackets on February 10, 1962. The affidavit reported that on March 16 a confidential informant had said "that during the previous week" he had seen certain fur jackets and stoles in the basement of the defendant's home. Labels had been removed and the informant was told the furs were stolen. The challenge to the search warrant included a claim that "during the previous week" was too indefinite. Mr. Justice Clark said for the Court:

"We believe that there was substantial basis for the Commissioner to conclude that stolen furs were probably in the petitioner's basement. No more is required." *Id.* at 533.

In *U.S. v. Harris*, 403 U. S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723 (1971), the Court was concerned with the sufficiency of an affidavit for a search warrant. In a footnote Mr. Chief Justice Burger said for the Court:

"We reject the contention of respondent that the informant's observations were too stale to establish probable cause at the time the warrant was issued. The informant reported having purchased whiskey from respondent 'within the

past 2 weeks,' which could well include purchases up to the date of the affidavit. Moreover, these recent purchases were part of a history of purchases over a two-year period. It was certainly reasonable for a magistrate, concerned only with a balancing of probabilities, to conclude that there was a reasonable basis for a search." *Id.* at 579.

The Court further said in that case:

"We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter [referring to *Jones v. U.S.,* 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960)]—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." *Id.* at 583.

In *Coyne v. Watson,* 282 F. Supp. 235 (S.D. Ohio 1967), *aff'd,* 392 F. 2d 585 (6th Cir. 1968), an affidavit was made on August 16. It related that "on or about" that day Coyne had a machine gun in his possession. There was no statement that the eye witnesses had seen the gun on that day. The court said:

"However, the affidavit before us indicates that, based on the information which was received from the two eye witnesses, the officer concluded 'that there is urgent necessity that said premises be searched in the night, to prevent said things from being concealed or removed so as not to be found.' In our view, this affidavit therefore contains language which shows on its face that the information received by the officer was recently contemporaneous and was to the effect that the machine gun was 'now' in the

possession of Coyne on the described premises."
*Id.* at 238.

In *Waggener v. McCanless*, 183 Tenn. 258, 191 S.W.2d 551, 162 A.L.R. 1402 (1946), an affidavit recited that the informant had told the affiant he had "just recently seen" a person place a quantity of intoxicating liquor on certain premises, that he had "recently seen" various persons drink intoxicating liquor on the premises and going there at various times of the day and night sober and returning in a drunken condition, and that an informant said sales had been made to him frequently and "within the last few days." In the course of its opinion the court said that it had previously held that a definite statement of the date of the offense upon which the affidavit was based must appear. In upholding this particular affidavit, it said:

> "We have no hesitation in deciding that to a reasonable mind, a statement by an observer at the time he made application for a warrant, that he had just recently seen a quantity of liquor stored on certain premises and had within the last few days, bought drinks of intoxicating liquor on those premises, would lead to the conclusion that the unlawful condition continued to exist on those premises at the time of the application for the warrant." *Id.* at 264-65.

Similar holdings are found in *Reynolds v. State*, 238 So. 2d 557 (Ala. Crim. App. 1970), *cert. denied*, 238 So. 2d 560 (1970) ; *People v. Nelson*, 171 Cal. 2d 356, 340 P. 2d 718 (1959) ; *State v. Taylor*, 28 Conn. Supp. 19, 246 A. 2d 898 (1968) ; *Borras v. Florida*, 229 So. 2d 244 (Fla. 1969) ; *People v. Casadonte*, 235 Mich. 198, 209 N. W. 74 (1926) ; *People v. Keur*, 234 Mich. 621, 208 N. W. 674 (1926) ; *People v. Feltner*, 234 Mich. 209, 207 N. W. 801 (1926) ; *State v. Clemente*, 108 N. J. Super. 189, 260 A. 2d 514 (1969) ; *Griffin v. State*, 95 Okla. Crim. 421, 246 P. 2d 424 (1952) ; and *Sutton v. State*, 419

S.W.2d 857 (Tex. Ct. Crim. App. 1967), *cert. denied*, 392 U. S. 911 (1968).

We find substance in the comment of the court in *State v. Kasabucki*, 52 N. J. 110, 244 A. 2d 101 (1968), where it said:

> "[N]o mathematical formula exists for application either by a trial or appellate court in deciding whether a search warrant was supported by probable cause. Each case depends upon a sensitive appraisal of the circumstances shown to the issuing judge." *Id.* at 117-18.

Thus we turn to the case at hand.

The affidavit in this case is no model. It constitutes an apt illustration of the comment made in some of the cases that the persons preparing such affidavits are not necessarily skilled in rhetoric. Moreover, if the person preparing the affidavit had all of the skill, experience, and knowledge of legal details and technicalities of a lawyer practicing in the field of criminal law, he would not be out on the firing line, so to speak, as an investigating police officer. We concur fully with the comment of the Court of Special Appeals that "in cases as important as this . . . some procedures should be invoked so that the affidavits and search warrants are prepared by persons with legal competence in the field."

We consider this case with the practicality suggested by Mr. Justice Goldberg in *Ventresca*. Examining and weighing the affidavit as a whole, we note that in the last paragraph the officers used the words "this same information *is* given by other sources," from which one could infer that that same information was given at that very time or so close in time as to justify the use of the present tense. (Emphasis added.) The "same information" to which reference is made is the receipt of information concerning narcotic violations and the report from the informant then sent who had been reliable in other cases in which report he stated what he saw and heard, including Edwards' statement that "some good

stuff" had arrived and that he had been advised "it would be a while before [Edwards] could do anything for [the informant] and that when he was ready it would be on the street with [Edwards'] dealers." A basis for evaluating the credibility of the informant whose observations in detail were recited was supplied, including, on the subject of the empty glassine bags on the kitchen table "along with measuring spoons and a quantity of white powder," the fact that he was an addict, "familiar with the gelatin caps and envelopes used in the Narcotic operations." The fact that no basis was supplied for evaluating the "same information [which was] given by other sources" does not detract from the credibility of the first source nor alter the statement as to the time of receipt of information from the "other sources."

Judge Markell pointed out for the Court in *Bratburd v. State,* 193 Md. 352, 356, 66 A. 2d 792 (1949), that in considering the warrant "we may at least consider the experience and special knowledge of the police officers who [were] applicants for search warrants." The logical time for officers with experience in the field to desire to make a raid would be when they were in possession of information that "some good stuff [was] in" and in the process of being packaged for sale, not some days or weeks later when the odds would favor its having been fully distributed, thereby making a raid a meaningless effort. Therefore, considering the affidavit as a whole, when the use of the word "is" relative to those other sources is added to the detailed observations of the informant of established reliability and also to the logical time for an experienced officer to contemplate a raid, we conclude that a prudent and cautious man would be justified in believing that an offense was being committed at the very time the application for a search warrant was made. That adds up to probable cause. Hence, the warrant was valid.

Numerous other points were raised by Edwards in his appeal to the Court of Special Appeals, none of which was considered by that court since it believed the issue

of the validity of the search warrant to be dispositive of the entire case. Upon the remand, that court will give consideration to those other points.

*Judgment reversed and case remanded to the Court of Special Appeals for further consideration.*