### KENNETH EDWARD GATLING *v.* STATE OF MARYLAND

[No. 326, September Term, 1977.]

*Decided December 12, 1977.*

256

The cause was argued before MENCHINE, MOORE and LISS, JJ.

*Howard Margulies, Assigned Public Defender,* for appellant.

*W. Timothy Finan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Lawrence Rosenberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, Kenneth Edward Gatling, was convicted in a court trial in the Criminal Court of Baltimore of possession of heroin and illegal possession and transportation of a handgun. Sentences were imposed and it is from these judgments that this appeal was filed.

Appellant made a motion to suppress and exclude certain evidence seized from his automobile at the time of arrest. After a hearing the trial court denied the motion and appellant raises three issues arising out of that denial. They are:

> (1) Did the trial court err in denying appellant's motion to suppress and exclude evidence where the

police officer did not have probable cause to believe that the vehicle contained fruits or instrumentalities of a crime and the evidence seized was not within the area of search incident to a lawful arrest?

(2) Was the search of appellant's automobile unreasonable because of the officers' failure to obtain a search warrant?

(3) Did the police officers who executed the search have probable cause because their informant lacked the veracity required under *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964)?

At the hearing to suppress, the State first produced Officer Finkinbinder who testified that on May 31st, 1976 he and his partner, Officer Tomak, were called to the Maryland General Hospital to see one Prentiss Benjamin who told them that shortly after he had won some money in a crap game he was accosted by a man he knew as Kenny who shot him twice and robbed him of his money. Benjamin had been drinking but according to the officers was not intoxicated. He described his assailant, the clothes he was wearing and stated that the gunman was operating a 1976 maroon Ford LTD with a black vinyl top and Maryland license tags. He did not know the tag numbers. The officers went to the scene of the crime but were unable to find any relevant evidence. Four days later at about 3:15 a.m. while on routine patrol in the area where the robbery had taken place, the police officers spotted a Ford LTD which matched the description of the car driven by Benjamin's assailant. The operator of the automobile also matched the description of the gunman given to the police by Benjamin. The officers pulled the car over and requested identification from the driver. The appellant, Kenneth Gatling, presented a registration card in the name of Gatling and a driver's license in the name of Kenneth Hawkins. He stated that he was Hawkins and that he had borrowed the car from his friend Gatling. The officer, suspicious of the automobile operator, requested him to give the date of birth specified on the operator's license. Appellant gave a date which differed from that on the license. While the officers were engaged in questioning Gatling, a passerby called to him, "Kenny can I

help you? Shall I call your mother?" On the basis of the totality of the information that the officers then had, they advised the appellant that he was under arrest for assaulting and robbing Prentiss Benjamin.[1] Appellant was placed in a position with his hands on the car above the rear door and Officer Finkinbinder looked into the vehicle and noticed a "gray rag" protruding from under the driver's seat. He pulled the rag out and found wrapped in it a fully loaded handgun and five bags of heroin. A search of the glove compartment disclosed three additional bullets and an aluminum foil package containing six additional bags of heroin.

### (1) (3)

At issue in this case is the validity of the search of the automobile and the seizure of the contraband found therein by the officers. The warrantless search in this case can be justified, if at all, only under the "automobile exception," first enunciated by the Supreme Court in *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), or because the search was incident to a lawful arrest under *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969).

The general rule is that a warrantless search is per se unreasonable under the 4th Amendment subject only to a few specifically established and well delineated exceptions. *Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967).

The *Carroll* exception states that a motor vehicle, unlike a home, may be searched without a warrant under appropriate circumstances when the officer has probable cause in the constitutional context to believe that the vehicle contains the fruits, instrumentalities or other evidence of a crime. *Mobley and King v. State,* 16 Md. App. 546, 298 A. 2d 446, *aff'd,* 270 Md. 76, 310 A. 2d 803 (1973), *cert. denied,* 416 U. S. 975 (1974). In addition to probable cause, the existence of exigent circumstances [2] must be shown in order to justify the failure

---

1. These charges were later nol prossed because the victim failed to appear for the trial.

2. No question of exigency is raised in this appeal and it is obvious that exigency, under the circumstances of the arrest, did in fact exist.

to obtain a warrant and to validate the warrantless search. *Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U. S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970).

In *Mobley and King, supra,* the Court of Appeals stated that:

> "Probable cause to conduct a warrantless search of an automobile under *Carroll* and its progeny exists in the constitutional sense where the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are such as would warrant a man of reasonable caution in believing that the vehicle contained articles lawfully subject to seizure. [Citations omitted]. . . . To satisfy the probable cause requirement, therefore, an officer is not required to have actual knowledge that the vehicle contains fruits, instrumentalities or other evidence of a crime at the time he undertakes his warrantless search. ' . . . [o]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause . . .' *Spinelli v. United States,* 393 U. S. 410, 419, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969)." 270 Md. at 81.

We think it is evident from the factual recitation we have heretofore set forth that there was ample probable cause for the officers to arrest the appellant as the perpetrator of the armed robbery alleged to have been committed in this case. The two pronged test of *Aguilar v. Texas, supra,* which requires a sufficient "basis of knowledge" for the information furnished to the police, was obviously met by the statement of the victim himself. The "veracity" prong requires that the arresting officer have some reason to believe that his source was credible or his information reliable. *Thompson v. State,* 16 Md. App. 560, 298 A. 2d 458, *cert. denied,* 268 Md. 753 (1973). As Judge Moylan noted in *Thompson,* the relevant inquiry is, "was the information furnished under reasonable assurances of trustworthiness?"

Here, the informant, at the hospital receiving treatment for a gunshot wound, gave a detailed description of the incident describing the assailant and his automobile. While he had been drinking, he was apparently in full control of his faculties. We find no reason to doubt that the information supplied by Benjamin to the police officers was sufficient to supply the probable cause for the apprehension of the appellant.

Appellant urges, however, that even if, *arguendo,* there was probable cause to arrest the appellant, there was not sufficient probable cause to believe that the vehicle contained the fruits, instrumentalities or other evidence of the crime and that therefore the warrantless search of the car was an unconstitutional intrusion and any evidence seized should have been suppressed. He relies principally on *Howell v. State,* 18 Md. App. 429, 306 A. 2d 554 (1973), *rev'd,* 271 Md. 378, 318 A. 2d 189 (1974). In *Howell,* the appellant had broken into a house and robbed and assaulted the owner. Two days later the victim selected a photograph of the appellant from a photo array and an arrest warrant was obtained. On the third day following the crime, the appellant was arrested, his car was searched and contraband was found. Appellant argues that *Howell* held that on the facts before the Court, the probable cause under *Carroll* was so attenuated over the intervening three days that it was diluted to the point of no return and that therefore *Carroll* did not apply. In this case, the intervening period is four days and obviously if *Howell* was decided as appellant suggests, it might well be dispositive of the issue here. The problem for appellant, unfortunately, is that we find no such discussion in *Howell.* The ultimate decision in *Howell* rested upon a discussion of *Chimel, supra.* The basis for reversal was the Court of Appeals' conclusion that the State had failed to meet its burden of establishing that the search and seizure was permissible under the standards enunciated in *Chimel.* The sole reference to *Carroll* in the original *Howell* case before this Court is the statement that:

> "the search of the automobile cannot be predicated upon the 'automobile exception' because of the

failure of Corporal Raymon to establish probable cause to believe that the automobile contained evidence of crime, one of the two necessary preconditions for the invocation of this exception to the basic proposition that all searches carried out without a warrant are *per se* unreasonable. *Carroll v. United States, supra; Chambers v. Maroney,* [*supra*]; *Coolidge v. New Hampshire,* [*supra*]." 18 Md. App. at 431-32.

On appeal to the Court of Appeals, the Court treated cursorily the *Carroll* doctrine as it applied to the appellant Howell, stating that:

"after examining the applicability of these two exceptions [*Carroll* and *Chimel*] to the facts of this case [the Court of Special Appeals] concluded that while the record did not contain sufficient evidence to demonstrate the existence of probable cause to justify the search of the vehicle under the 'automobile exception', the seizure of the marijuana was proper as being within the dictates of *Chimel.*" (Citations omitted, footnotes omitted.) 271 Md. at 381.

At no point in either of the *Howell* cases is there a discussion of the issue of the staleness of probable cause. The exact factual issue in this case, *i.e.,* whether the probable cause to conduct a warrantless search may be vitiated by the remoteness of the information upon which probable cause is based, has not heretofore been presented to this Court. In the recent case of *Peterson v. State,* 281 Md. 309, 379 A. 2d 164 (1977), Judge Orth, of the Court of Appeals, gave a thorough analysis of the cases which have considered the dissipation of probable cause for the issuance and execution of a search and seizure warrant where it was contended that remoteness in time of the facts set forth in the affidavit had attenuated the probable cause necessary for the issuance of the warrant. Judge Orth in enunciating the criteria to be considered, quoted from this Court's opinion in *Andresen v. State,* 24 Md. App. 128, 172, 331 A. 2d 78, *cert. denied,* 274 Md. 725 (1975),

262

*aff'd*, 427 U. S. 463, 96 S. Ct. 2737, 49 L.Ed.2d 627 (1976), as follows:

" 'The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.' " 281 Md. at 317.

He went on to observe that:

"When *Andresen* went before the Supreme Court of the United States, *Andresen vs. Maryland*, 427 U. S. 463, 96 S. Ct. 2737 (1976), one of the bases of Andresen's argument that the affidavits failed to establish probable cause was that the information on which they were based was so stale that there was no reason to believe that the documents sought were still in his possession. He argued that there was a three-month delay between the completion of the transactions on which the warrants were based, and the ensuing searches, and that this time lapse precluded a determination that there was probable cause to believe that petitioner's offices contained evidence of the crime. *Id.* at 478 n. 9. The Court found that the contention was belied by the particular facts of the case, which it thought amply supported the

belief that Andresen retained the sought-for records. *Id.* at 478-479 n. 9." 281 Md. at 317. *See State v. Edwards,* 266 Md. 515, 295 A. 2d 465 (1972); *Washburn v. State,* 19 Md. App. 187, 310 A. 2d 176 (1973); *Johnson v. State,* 14 Md. App. 721, 288 A. 2d 622, *cert. denied,* 266 Md. 738, *cert. denied,* 409 U. S. 1039 (1972); *Clayton v. State,* 1 Md. App. 500, 231 A. 2d 717 (1967).

We are persuaded that the same tests which are to be applied in determining the staleness of probable cause in the execution of a warrant should be applicable to a warrantless search of an automobile under the *Carroll* doctrine.

The question to be determined in this case is whether under the facts and circumstances known to the police officers at the time of the arrest and search, a reasonable and prudent man would be led to believe that the automobile contained either the fruits or instrumentalities of the alleged shooting and robbery of Prentiss Benjamin. Our own independent appraisal of these facts and circumstances convinces us that there was no constitutional infirmity in this search and seizure under the *Carroll* doctrine. The appellant's vehicle was similar to that described in detail by the victim. It was stopped in the general vicinity of the occurrence of the crime. The operator of the vehicle matched the physical description of the assailant given by the victim. The name "Kenneth" on the vehicle registration matched the "Kenny" given by the victim as the name of the person who robbed him. The operator gave the police reason to believe that the operator's license he displayed was a false one.

At this point it was obvious that the man the police had stopped was the assailant. The only remaining problem to be resolved was whether the police had probable cause to believe that the vehicle contained at that time either the fruits or instrumentalities of the crime. Four days had elapsed since the original information had been received by the police from the victim. We think it evident that it was unlikely that the fruits of the crime were still in the car. The money robbed from Prentiss Benjamin was not likely to be secreted in the vehicle. A different situation, however, existed concerning

the weapon. The accused had used a gun in robbing Benjamin and in the course of the robbery had shot Benjamin twice. A prudent and reasonable man might well have had reasonable cause to believe that the gun was being transported in the automobile, particularly when the officer's pat down revealed no weapon on the accused. An experienced police officer would surely have reason to know that it was not unusual for a robber to carry his gun either in the glove compartment or under the seat of his car. Nor would the expiration of the four days make it likely that the accused had removed the instrumentality of the crime from the vehicle. Applying the tests suggested by *Andresen, supra,* it is clear that the gun was of enduring utility to its owner, and that the automobile provided the appellant with a secure operational base for its secretion. We hold then that the trial court's ruling on this issue was correct.

### (2)

Appellant contends finally that the trial court erred in denying his motion to suppress because the officers failed to secure a search and seizure warrant during the four-day period between the time they received the information from Benjamin and the date of the arrest. We find no merit to this contention. No warrant was necessary to arrest the appellant so long as the officers had probable cause to believe he had committed a felony. Appellant relies on *Coolidge v. New Hampshire, supra,* but that case is factually dissimilar from the case at bar. In *Coolidge,* the car that was ultimately searched was regularly parked in the defendant's driveway for more than three weeks after the time that the defendant was first questioned by the police and the police were well aware of the car's probable role in the crime. At the time of defendant's arrest, the car was impounded and removed to the police lot where it was subsequently searched on three different occasions. The warrant which authorized the action of the police was later found to be fatally defective, and, in rejecting the government's contention that the search was justified under the *Carroll* exception, the Court stated there was "no alerted criminal bent on flight, no fleeting

opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile." 403 U. S. at 462. The facts before us in this case are readily distinguishable in that the appellant was driving a car in which the police had probable cause to believe that a weapon was being transported and to secure a warrant under these circumstances would be totally impractical.

We conclude the search and seizure in this case was constitutionally permissible under the *Carroll* exception.

*Judgments affirmed; costs to be paid by appellant.*