# ROBERT EDWARD LEE *v.* STATE OF MARYLAND

[No. 249, September Term, 1980.]

*Decided November 13, 1980.*

The cause was argued before GILBERT, C. J., and COUCH and MACDANIEL, JJ.

*Philip H. Armstrong,* with whom were *Robert C. Heeney, Mark R. Thompson* and *Heeney, Armstrong & Heeney* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L.*

*Sonner, State's Attorney for Montgomery County,* and *Jimmy Hill, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The appellant, Robert Edward Lee, was convicted by a jury in the Circuit Court for Montgomery County of various violations of the Maryland Controlled Dangerous Substances Act. *See* Md. Ann. Code art. 27, §§ 276-303 (1976 Repl. Vol.). Following conviction, Lee was sentenced to a period of 15 years incarceration, but a sentence review panel reduced the time to be served to five years.

Lee has appealed to this Court where he advances a pentad of reasons why the judgment of the circuit court should be reversed. Because we hold that the trial court erred in refusing to grant appellant's motion to suppress physical evidence, we find it unnecessary to consider the other four issues raised.

We set forth briefly the factual situation from which this matter arose.

From the record it is apparent that Officer Michael Garvey of the Montgomery County Police Department applied for and obtained a search warrant on December 19, 1978 for the premises known as Apartment 9, 12309 Braxfield Court, Rockville, Maryland. Lee was apprehended in that particular apartment on that same date when the warrant was executed at 9:10 a.m.

As a result of the search, the police seized in the premises approximately 33½ pounds of marijuana, 510 methaquadone tablets, 742 capsules of amphetamine, a scale, miscellaneous personal papers belonging to Lee, $7,266 in United States currency, of which $1,415 were in Lee's pocket, a quantity of glass vials, two cutting boards, plastic "baggies," and other paraphernalia.

Prior to trial, Lee moved to suppress the evidence for want of probable cause in the issuance of the warrant. Additionally, Lee asked for a hearing pursuant to *Franks v.*

*Delaware,* 438 U.S. 154 (1978). The court heard argument on both motions and denied them.

When the matter went to trial before the judge who issued the warrant, Lee, through his counsel, asked the court to rehear the motion to suppress the evidence. The rehearing was denied.

Lee contends that the application for the warrant shows on its face that the information relied upon by the issuing judge was stale and did not establish probable cause. We agree.

In *Peterson v. State,* 281 Md. 309, 379 A.2d 164 (1977), *cert. denied,* 435 U.S. 945 (1978), the Court of Appeals addressed the issue, for the first time, of stale probable cause. Judge Orth, writing for the Court, summarized the rules governing probable cause in the issuance of a search warrant. He quoted from *State v. Edwards,* 266 Md. 515, 518-19, 295 A.2d 465, 466-67 (1972), where it said:

> "The finding of 'probable cause,' while demanding more than mere suspicion, *Draper v. U.S.,* 358 U.S. 307, 311-12, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959), requires less evidence than would justify conviction, *Locke v. U.S.,* 7 Cranch 339, 348, 3 L. Ed. 364 (1813), and less than would justify an officer in making a search without a warrant, *Johnson v. U.S.,* 333 U.S. 10, 15, 68 S. Ct. 367, 92 L. Ed. 436 (1948). The evidence itself need not be legally competent in a criminal trial, *Draper v. U.S., supra,* 358 U.S. at 311, and may in fact be hearsay, *Jones v. U.S.,* 362 U.S. 257, 272, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), so long as the judicial officer issuing the warrant is informed of some underlying circumstances supporting the affiant's conclusions and his belief that any informant involved was credible or his information reliable, *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and such judicial officer is entitled to draw reasonable inferences from the facts contained in the affidavit based on his

experience in such matters. *Irby v. U.S.,* 114 U.S. App. D.C. 246, 314 F.2d 251, 253 (1963), *cert. denied,* 374 U.S. 842 (1963)." *Peterson v. State, supra* at 313, 379 A.2d at 166.

Judge Orth, for the *Peterson* Court, went on to declare:

"Our concern in determining whether a warrant necessary to the reasonableness of a search and seizure has been issued upon an affidavit supporting probable cause is only with the question ' "*whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched;* and if the apparent facts set out in the affidavit are such that a reasonably discreet [sic] and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant." ' *State v. Edwards,* 266 Md. at 519, quoting *Dumbra v. United States,* 268 U.S. 435, 441, 45 S. Ct. 546 (1925). It follows that if the facts set out in the affidavit are 'stale,' the affiant would not have reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched. The question is what constitutes 'stale probable cause.'" (Emphasis supplied.) *Id.* at 313-14, 379 A.2d at 166-67.

The *Peterson* Court adopted the rule regarding stale probable cause as stated in *Garza v. State,* 120 Tex. Crim. 147, 149, 48 S.W.2d 625, 626 (1932), which "properly states the law and embodies the holdings of the Court of Special Appeals,[1] the more persuasive teachings of the courts in

1. Gatling v. State, 38 Md. App. 255, 380 A.2d 654 (1977), *cert. denied,* 282 Md. 732 (1978); Andresen v. State, 24 Md. App. 128, 331 A.2d 78, *cert. denied,* 274 Md. 725 (1975), *aff'd,* 427 U.S. 463, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976); Washburn v. State, 19 Md. App. 187, 310 A.2d 176 (1973); Johnson v. State, 14 Md. App. 721, 288 A.2d 622, *cert. denied,* 266 Md. 738, *cert. denied,* 409 U.S. 1039 (1972); Clayton v. State, 1 Md. App. 500, 231 A.2d 717 (1967).

other jurisdictions, and the general opinions of text writers and commentators." *Peterson v. State, supra* at 315, 379 A.2d at 167. The Texas Court articulated the rule as follows:

> "The affidavit for a search warrant on probable cause, based on information and belief, should in some manner, by averment of date or otherwise, show that the event or circumstance constituting probable cause, occurred at the time not so remote from the date of the affidavit as to render it improbable that the alleged violation of law authorizing the search was extant at the time the application for the search warrant was made." *Garza v. State, supra* at 149, 48 S.W.2d at 626.

In the instant case, the warrant was issued, as we have said, on December 19, 1978. The affidavit in support of the warrant contains 24 numbered items. A careful review of its contents shows that many of the statements made by the affiant are merely conclusory, and although several different informants are relied upon by the affiant, only one was properly established as a reliable source.

Items one (1) through five (5), seven (7), nine (9), eleven (11), twelve (12), and fifteen (15) relate information received by various anonymous persons. No attempt was made, however, to establish that those persons were credible or reliable sources. Singularly, item 10 relates information received by affiant from an informant whose reliability is adequately established. *See Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). The affidavit in pertinent part stated:

> "10. On January 26, 1978, Cpl. R. Ricucci, Montgomery County Department of Police, Vice-Narcotic Division, received information from a confidential reliable informant. The confidential reliable informant will be referred to as Confidential Reliable Informant #2. Confidential Reliable Informant #2 told Cpl. Ricucci that he had been in Robert Lee's apartment during the week of January 12, 1978 and had observed in the apartment three ounces of cocaine, $1,000.00 worth of Quaaludes,

218

1,000 Black Beauties and 10 lbs. of Marihuana. Confidential Reliable Informant #2 stated that Robert Lee makes trips to Florida to obtain drugs. Confidential Reliable Informant #2 has in the past supplied information which was [*sic*] been reliable to the Narcotic Section of the Vice-Narcotic Division of the Montgomery County Department of Police.

A) Between November of 1976 and December of 1976, Confidential Reliable Informant #2 provided information which led to the execution of a search warrant and the seizure of a large quantity of pharmaceutical drugs along with two arrests which resulted in convictions in the Circuit Court for Montgomery County, Maryland.

B) Between December 1976 and January 1977, this Confidential. Reliable Informant #2 provided information which led to the arrest of one adult for burglary in Montgomery County and the recovery of stolen property.

C) Between May 1976 and June 1976, this Confidential Reliable Informant #2 set up a buy-bust arrest which resulted in the seizure of nineteen (19) pounds of marihuana and a conviction of the subject in the Circuit Court for Montgomery County, Maryland.

D) In February of 1976, this Confidential Reliable Informant #2 provided information which led to the arrest of a subject wanted for Distribution of Heroin by the Montgomery County Department of Police.

E) In July of 1977, this Confidential Reliable Informant #2 set up a buy-bust arrest of a subject which resulted in the seizure of twenty-five (25) pounds of marihuana.

F) In July of 1977, this Confidential Reliable Informant #2 provided information which led to the arrest of a subject wanted for daytime housebreaking and forgery.

G) In February of 1978, this Confidential Reliable

Informant #2 provided information which led to the arrest of a subject wanted for Assault with Intent to Murder and Escape in Montgomery County, Maryland.

H) During the month of January 1978, this Confidential Reliable Informant #2 provided information which led to the execution of a search warrant and a seizure of a quantity of controlled dangerous substance along with one arrest which resulted in a conviction in the Circuit Court for Montgomery County, Maryland."

The quoted passages would be sufficient to establish probable cause, notwithstanding the inadequacy of the information supplied in the affidavit as obtained from other sources. *Johnson v. State,* 14 Md. App. 721, 725, 288 A.2d 622, 625, *cert. denied,* 266 Md. 738, *cert. denied,* 409 U.S. 1039 (1972). The remoteness of the informant's observations as disclosed in the affidavit, however, leads us to conclude that the information was stale.

The informant allegedly observed the unlawful drugs in Lee's apartment during the week of January 12, 1978. The warrant was issued on December 19, 1978, eleven months later. There are no facts asserted to indicate any continuing activity between January and December of 1978 which would link the appellant to illegal drugs. It has been held that "where the affidavit recites facts indicating activity of a protracted and continuous nature, or a course of conduct, the passage of time becomes less significant, so as not to vitiate the warrant. . . ." (Citations omitted.) *See Peterson v. State, supra* at 317-18, 379 A.2d at 168-69. No such facts are presented in the affidavit utilized in the matter now before us.

Items thirteen (13) through twenty-three (23) of the affidavit primarily concern observations made by the affiant through surveillance of the appellant's residence. The officer said:

"13. On August 21, 1978 at approximately 8:50 P.M., your affiant was on surveillance at 12309

Braxfield Court. At approximately 9:15 P.M., your affiant observed a brown Mercedes with 1979 Maryland registration DZL 459 driven by a w/m with shoulder length brown hair, dark T-shirt, also a w/f with dark hair was observed in the vehicle. Your affiant observed both subjects go to the door of Robert Edward Lee and knock. All the lights came on inside of R.E. Lee's apartment. Both subjects were admitted into R.E. Lee's residence.

On August 21, 1978 at approximately 9:40 P.M., your affiant observed both subjects exit R.E. Lee's residence and enter the Mercedes and leave the parking lot. At this time, the lights in R.E. Lee's living room went out.

14. According to Maryland Motor Vehicle Administration, Maryland registration DZL 459 is listed to Philip Edward Bourne, W/M, DOB 12/08/50 of 10 Schindler Court, Silver Spring, Montgomery County, Maryland on a 1969 Mercedes.

15. On February 6, 1975, Cpl. Ricucci, Vice-Narcotic Division, Montgomery County Department of Police spoke with a concerned citizen who stated that Philip E. Bourne had a lab in Ocean City, Maryland where Bourne was making pure Phencyclidine (PCP), a controlled dangerous substance of Schedule II. This concerned citizen will be referred to as Concerned Citizen #3. Concerned Citizen #3 felt that Bourne was possibly making the Phencyclidine (PCP) at 10 Schindler Court, Silver Spring, Montgomery County, Maryland.

16. On November 13, 1978, your affiant was on a surveillance at 12309 Braxfield Court and at approximately 2005 hours, your affiant observed a Cadillac Eldorado convertible displaying Maryland registration FZW 902 drive into the parking lot and back into a vacant parking space. The vehicle was occupied by three white males. One of the white

males exited the vehicle and went to the door of Robert Lee's apartment. The w/m was admitted into the residence. At 2015 hours, the white male was observed exiting the apartment. The white male went to and entered the Cadillac Eldorado then left the parking lot. According to the Maryland Motor Vehicle Administration, Maryland registration FZW 902 is listed to a 1964 Volkswagon to Gregory Mark Hall, W/M, DOB 10/09/60, 540 Palisades Drive, Crownsville, Anne Arundel County, Maryland.

At 2020 hours a white female was observed exiting Robert Lee's apartment. This white female got into a vehicle which was displaying Maryland registration CVL 490. According to the Maryland Motor Vehicle Administration, Maryland registration CVL 490 is not a listed tag. As the white female was getting into her vehicle, Robert Lee was observed looking out his balcony window.

17. On November 14, 1978 at approximately 8:25 P.M., your affiant was on surveillance at 12309 Braxfield Court and observed R.E. Lee come out of his residence and go to his vehicle. Your affiant observed R.E. Lee put something into his front pocket. R.E. Lee then went back into his residence.

On November 14, 1978 at approximately 8:30 P.M., your affiant observed an unknown W/F knock on R.E. Lee's apartment door. Lee was observed through the open drapes on the patio admitting the w/f. R.E. Lee and the w/f then walked to the rear of the apartment.

On November 14, 1978 at approximately 8:35 P.M., your affiant observed an unknown W/M knock on R.E. Lee's door. R.E. Lee was observed through the patio window to go to the door and admit the W/M. R.E. Lee and the W/M walked to the rear of the apartment. The W/F was still inside R.E. Lee's residence.

On November 14, 1978 at approximately 8:45 P.M., your affiant observed the W/M exit R.E. Lee's residence. The W/M had shoulder length light hair. The W/M was driving a Ford Ranchero with a small camper top, mag wheels, with Maryland registration N 50636.

According to the Maryland Motor Vehicle Administration, Maryland registration N 50636 is listed to Philip Edward Bourne, W/M, DOB 12/08/50 of 10 Schindler Court, Silver Spring, Montgomery County, Maryland.

On November 14, 1978 at approximately 9:00 P.M., your affiant observed the W/F exit R.E. Lee's apartment and get into a green Chevy Nova with a black top with damage to the right front fender with Maryland registration GFP 265.

According to Maryland Motor Vehicle Administration, Maryland registration GFP 265 is listed to Robert Edward Bastian, W/M, DOB 05/30/49 of 12309 Braxfield Court, #1, Rockville, Montgomery County, Maryland.

On November 14, 1978 at approximately 9:19 P.M., your affiant observed R.E. Lee come out onto his balcony and look around and go back inside residence.

On November 14, 1978 at approximately 9:35 P.M., your affiant observed a gray van operated by a W/M drive to the side of Braxfield Court Apartments. Your affiant then observed a W/F exit the gray Van and walk across the parking lot and enter Lee's apartment. R.E. Lee and the W/F walked to the rear of R.E. Lee's apartment.

On November 14, 1978 at approximately 9:50 P.M., your affiant observed R.E. Lee and the W/F walk to Lee's door. The W/F exited Lee's apartment and walked across the parking lot toward the gray van holding her stomach as if she was hiding something

up her shirt. The W/F was observed to walk to the van and get in. Maryland registration on Van was N 12819.

According to Maryland Motor Vehicle Administation, Maryland registration N 12819 is listed to Wiser Electric Co. of 16771 Oakmont Avenue, Gaithersburg, Maryland.

18. On December 8, 1978, Off. J.R. Hock, Jr., Montgomery County Department of Police, acting in an undercover capacity, met a w/f, 20-22 years named Fran for the purpose of purchasing a quantity of Quaaludes. Off. Hock picked Fran up at her residence. Off. J.R. Hock asked Fran if she had the Quaaludes (Methaqualone). She said no that she would have to pick them up. Fran stated that they could get the Quaaludes at one of two places. One place they would be $4.00 per tablet or they could go to Bobs [sic] and if they bought more than ten tablets, they would pay $3.50 per tablet. Fran and Off. J.R. Hock decided to go to Bobs [sic] for the cheaper price. Fran directed Off. J.R. Hock to 12309 Braxfield Court, Rockville, Montgomery County, Maryland. Off. J.R. Hock parked in the parking lot. Off. J.R. Hock handed Fran $40.00 U.S. Currency which had previously been withdrawn from the Montgomery County Department of Police Narcotic Enforcement Fund. Fran then exited Off. J.R. Hock's vehicle and entered Apt. 9. Approximately three minutes later at 2000 hours, Fran returned to Off. J.R. Hock's vehicle and stated Bob didn't have Quaaludes now but he would later. She described Bob as "Screwed Up". Fran returned the $40.00 to Off. J.R. Hock. Off. J.R. Hock drove Fran to the Citgo Gas Station near the intersection of Veirs Mill Road and Randolph Road and dropped Fran off. Methaqualone is a controlled dangerous substance of Schedule II.

19. On December 11, 1978 at approximately 8:40

P.M., your affiant observed an unknown person, not R.E. Lee, in the rear bedroom of R.E. Lee's apartment.

On December 11, 1978 at approximately 10:15 P.M., your affiant observed a w/m, long shoulder length hair, beard and pointed hat exit R.E. Lee's apartment carrying a bottle covered with a paper bag and a brown box with a white label on the outside. The W/M entered a light colored Ford pickup truck, Maryland registration L 69986. Your affiant followed the truck to Quince Orchard Shopping Center located at Cloppers Road, Gaithersburg, Montgomery County, Maryland. Your affiant observed the W/M park in front of Dart Home and exit the vehicle. Your affiant walked by the truck and observed the bottle and brown box sitting on the front seat of the truck. Your affiant then went inside the Dart Home and observed the W/M purchasing two (2) sieves.

Your affiant then drove to 754 Quince Orchard Boulevard, Gaithersburg, Montgomery County, Maryland and observed the truck park in front of the same address. Your affiant observed the driver of the truck run into the apartment building with no bottle or box observed.

20. On December 12, 1978 at approximately 1:00 A.M., your affiant observed the W/M exit 754 Quince Orchard Boulevard, Gaithersburg, Montgomery County, Maryland and enter the truck. The W/M drove to the Londonderry Apartments, Gaithersburg, Montgomery County, Maryland, where the surveillance ended.

According to Maryland Motor Vehicle Administration, Maryland registration L 69986 is listed to John Ogden Zedler, W/M, DOB 01/29/49 of 754 Quince Orchard Boulevard, #202, Gaithersburg, Montgomery County, Maryland.

21. On December 12, 1978 at 2045 hours your affiant observed a vehicle displaying Maryland registration DDP 780 park in the parking lot in front of Lee's residence. A W/F exited the vehicle and walked to the front door of Lee's residence. The W/F was then observed inside Lee's residence talking with Lee.

On December 12, 1978 at 2100 hours the W/F was observed exiting Lee's residence and entered vehicle displaying Maryland registration DDP 780. The vehicle then left the parking lot.

According to Maryland Motor Vehicle Administration, Maryland registration DDP 780 is listed on a 1975 Chevrolet, to Susan Martha Payne, W/F, 6/18/49, 3927 Isbelle Street, Wheaton, Maryland.

22. On December 13, 1978 at 2000 hours, your affiant was on surveillance at Robert Lee's apartment and observed a white male with goatee and a white female inside the apartment of Robert Lee. The white female and the white male with a goatee were observed exiting Lee's apartment. The white male with the goatee was carrying a rolled up brown shopping bag. The white female and the white male with a goatee got into a vehicle displaying Maryland registration CPN 191. According to the Maryland Motor Vehicle Administration, Maryland registration CPN 191 is not a listed tag.

At 2035 hours, your affiant observed a white male exit the apartment carrying a white bag. The white male was observed entering a van with Maryland registration N 12462 and leave the parking lot. According to the Maryland Motor Vehicle Administration, Maryland registration N 12462 is listed on a 1976 Ford Truck to Rose Lena Marcella W/F, DOB 02/01/26, 11200 Lockwood Drive, Silver Spring, Maryland.

At 2054 hours, a white male was observed entering Robert Lee's apartment. The white male was observed walking to the rear of Lee's apartment with Lee. At 2110 hours, the white male was observed exiting Lee's apartment and entering a vehicle displaying Maryland registration CLT 145. According to the Maryland Motor Vehicle Administration, Maryland registration CLT 145 is listed to a 1972 Chevy, Dominick Anthony Binetti, W/M, DOB 05/11/24, 3808 Wexford Road, Kensington, Maryland.

At 2130 hours, a small white female was observed exiting Robert Lee's apartment. The white female was observed getting into a van displaying Maryland registration M 29126. According to Maryland Motor Vehicle Administration, Maryland registration M 29126 is listed on a 1977 Dodge Truck, to Rita Marie Lynd, W/F, 03/31/58 and Claud David Lynd, W/M 06/07/30, 4700 Olden Road, Rockville, Maryland.

At 2240 hours, a w/m with long dark hair and beard was observed entering Lee's apartment and walking with Lee to the rear of the apartment. At 2250 hours, Lee was observed with the W/M walking to the front of the apartment. Off. Garvey was outside of Lee's apartment and observed the W/M walking down the sidewalk in front of Lee's apartment carrying a dark plastic trash bag which was approximately ¼ full. The white male got into a vehicle displaying Maryland registration FJC 637, and left the parking lot.

According to the Maryland Motor Vehicle Administration, Maryland registration FJC 637 is listed on a 1968 Ford, to Arthur Leroy Skipworth, 833 Mill Creek Road, Anne Arundel County, Maryland.

23. On December 18, 1978, your affiant was on

surveillance at the residence of Robert Lee and the following observations were made by your affiant and Off. J. Hock.

At 1955 hours, your affiant observed a vehicle displaying Maryland registration EBT 714 park in the parking lot. The vehicle was occupied by two white males and one white female. The W/F exited the vehicle and went into Lee's apartment.

At 2010 hours, the white female exited the apartment and returned to the vehicle. The vehicle and all occupants then left the parking lot.

According to the Maryland Motor Vehicle Administration, Maryland registration EBT 714 is listed on a 1968 Ford, four door, to David Lee Drazek, W/M, 06/28/56, 9166 Edmonston Rd., #302, Greenbelt, Md.

At 2020 hours all the lights in the residence went out.

At 2025 hours, a white female was observed exiting a van that was driven to the front of Lee's residence. This van was displaying Maryland registration M 29126. A white female exited the van and entered Lee's residence. At this time, the lights in Lee's apartment came on.

At 2030 hours, the white female was observed exiting Lee's residence and went to the Van with Maryland registration M 29126. Two white females were observed exiting the vehicle and with the first white female went back into Lee's residence.

At 2050 hours, two white females exited Lee's residence and entered the van displaying Maryland registration M 29126 and left the parking lot. Maryland registration M 29126 has been previously mentioned.

At 2051 hours, two white females were observed exiting a vehicle parked in front of Lee's residence displaying Maryland registration EXR 738. These

two white females went into Lee's apartment carrying several packages each.

According to the Maryland Motor Vehicle Administration, Maryland registration EXR 738 is listed on a 1976 Volkswagon, two door, to Pamela Shull Miller, W/F, 10/20/56, 9536 Canaberry Riding, Laurel, Maryland.

At 2058 hours, a white male with long dark hair and long dark beard was observed walking up the sidewalk in front of Lee's residence walking toward the door. This white male was then observed inside Lee's residence walking to the back of the apartment.

At 2102 hours, the white male with long dark hair and long dark beard was observed leaving Lee's residence. This white male was observed leaving the parking lot operating a vehicle displaying Maryland registration EZW 664.

According to the Maryland Motor Vehicle Administration, Maryland registration FZW [sic] 664 is listed on a 1974 Volkswagon, two door, to Rudolph Quincy Hines, W/M, 03/13/47, 12209 Dalewood Drive, Wheaton, Maryland.

At 2125 hours, a white male was observed parking a vehicle displaying Maryland registration GSJ 357 in the parking lot in front of Lee's residence. The white male exited the vehicle and went to the trunk of the vehicle. The white male opened the trunk and removed a large brown cardboard box from the trunk. The white male carried the box to Lee's apartment. The white male was then observed inside of Lee's residence.

At 2135 hours, Lee was observed closing the blinds to a window in his residence.

At 2141 hours, the white male was observed exiting Lee's residence and was carrying nothing. The white male got in the vehicle displaying Maryland registration GSJ 357 and left the parking lot.

According to the Maryland Motor Vehicle Administration, Maryland registration GSJ 357 is listed on a 1969 Ford, two door, to Salvatore Francis Vastola, W/M, 03/13/54, 8209 Greenwood Avenue, Takoma Park, Maryland.

At 2155 hours, a vehicle displaying Maryland registration L 69986 was observed parking in the lot in front of Lee's residence. A white male long shoulder length hair, beard, wearing a big pointed hat and carrying a rolled up brown paper bag exited the vehicle and walked to door of Lee's residence. The W/M was then observed inside of Lee's residence walking to the rear of the residence with Lee.

At 2245 hours, the white male was observed exiting Lee's residence with a white female, [*sic*] The white male and the white female got into the vehicle displaying Maryland registration L 69986 and left the parking lot. Maryland registration L 69986 has been previously mentioned.

At 2250 hours, the lights in the residence went out.

On 12/19/78 at 0340 hours Officer Donald Freitag of the Montgomery County Department of Police, Vice and Narcotics Division relieved Officer Hock of his surveillance post at Robert Lee's residence. Officer Hock advised Officer Freitag that the lights in the residence had been out since 2250 hours and there had been on [*sic*] one in or out of the apartment.

On 12/19/78 at 0510 hours Officer Freitag observed the lights in Lee's residence come on. At 0515 hours Officer Freitag observed Robert Lee and a white female exit Lee's residence. The white female got into Lee's vehicle displaying Maryland registration 475 ADG, Robert Lee went to the trunk and opened it and appeared to be moving things around in the trunk but he did not place anything in it. Robert Lee then got into his vehicle and left the parking lot.

At 0615 hours Officer Freitag observed Robert Lee's vehicle enter the parking lot and park his vehicle in the same space he had left at 0515 hours. The white female exited the vehicle and walked toward the front door of Lee's residence. Robert Lee exited his vehicle and went and opened the trunk. Robert Lee was observed removing what appeared to be three shopping bags with handles and a large green duffel bag. Robert Lee was observed to take these items into his residence. Once inside the residence Robert Lee and the white female were observed walking in a fast pace to the rear of the residence."

The affiant concluded his narration of the facts of the surveillance with "a list of characteristics which are common during drug trafficking." He stated:

"[S]everal people arrive in one vehicle, but only one or two persons enter the residence, persons involved in drug trafficking conduct such transactions within short periods of time; before entering a residence used for the purpose of drug trafficking several persons may each give one person money to go into such a residence to purchase controlled dangerous substances. Persons purchasing controlled dangerous substances often park their vehicles not directly in front of a residence used for drug trafficking. Vehicles from different jurisdictions frequent the residence used for the trafficking of controlled dangerous substances. Packages go in and out of residences used for the trafficking of controlled dangerous substances."

A careful reading of the officer's recitations of his observations will disclose that the surveillance does not satisfy any of the officer's stated criteria "common to drug trafficking." Nothing in those observations, as related by the affiant, indicated that there were unlawful drugs in Lee's apartment or that Lee was involved in any criminal activities. That the surveillance revealed persons arriving and leaving Lee's apartment does not support a rational inference that drug sales were taking place at the residence.

There is nothing alleged that suggests any unusual activity nor are there facts sufficient to show that any of the persons observed during the surveillance were known users or dealers in the illegal sale of drugs. Moreover, the affiant did not observe any actual purchases or sales of proscribed controlled dangerous substances.

Item eighteen (18) simply tells of an unsuccessful attempt by an informant, whose reliability is not established, to purchase narcotics from the appellant on December 8, 1978. The item alleges that the informant went to Lee's apartment but could not obtain drugs because Lee did not have them.

Applying the *Peterson* standards to the affidavit in support of the warrant issued in the instant case leads us to conclude that there were insufficient facts to pass muster on "reasonable grounds" at the time of the making of the affidavit and the issuance of the warrant thereon to believe that Lee's apartment contained controlled dangerous substances. At best the affiant's observations do not rise above the level of suspicion. *Cuffia v. State,* 14 Md. App. 521, 525, 287 A.2d 319, 322 (1972).

The information related by the only informant whose reliability was adequately established was "stale." The happenings related were so remote in time as to be virtually worthless. That an event occurred in January 1978 does not support a conclusion that it is still happening eleven months later.

In our view, a reasonably prudent person could not determine from the affidavit that Lee's apartment probably contained contraband on the date the warrant was issued. Because the affidavit in support of the warrant failed to demonstrate probable cause, the warrant itself was invalid and in violation of the Fourth Amendment to the Constitution of the United States. Accordingly, Lee's motion to suppress the evidence should have been granted.

> *Judgment reversed and case remanded for a new trial.*
> *Costs to be paid by Montgomery County.*